[No. 52659-6-I. Division One. February 7, 2005.]

*In the Matter of the Personal Restraint of* CALVIN CLEMENTS, *Petitioner.*

*James E. Lobsenz* (of *Carney Badley Spellman*), for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Ann M. Summers, Deputy,* for respondent.

¶1 ELLINGTON, A.C.J. — Calvin Clements' former girl friend told police he entered her apartment without permission, stole certain items, and struck her. Clements later entered an *Alford*[1] guilty plea to charges of residential burglary and fourth degree assault. Before Clements' sentencing, the victim contacted defense counsel and gave a videotaped statement retracting some of her allegations. Clements then moved to withdraw his plea on grounds it was without a factual basis. The trial court denied the motion. Clements eventually filed this personal restraint petition, alleging the trial court violated his due process rights by refusing to permit him to withdraw his guilty plea. We reject Clements' arguments and deny his petition.

## FACTS

¶2 On March 11, 2001, Amy Pendleton told police Calvin Clements had entered her apartment without permission. She reported she had been attempting to end her relationship with Clements, but he had repeatedly returned to her apartment. According to Pendleton, Clements returned to her apartment that day when she was not home, pounded on the door, entered through a window upon which she had recently placed new locks, and removed some of her belongings in two book bags. Clements later returned to the apartment when Pendleton was home, and grabbed her arm, causing some bruising. Pendleton's 14-year-old son was present in the apartment and gave a statement corroborating much of Pendleton's account.

¶3 Clements was charged with one count of residential burglary and one count of assault. On May 11, 2001, Clements entered an *Alford* plea to both charges. As part of the plea agreement, the State agreed to recommend a first-time offender waiver, with no jail time.

¶4 Before sentencing, Pendleton contacted Clements' attorney and informed him that statements she made to police and to defense counsel during an earlier interview

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

had been untrue. She explained that she had become very angry after catching Clements "cheating on [her] yet again." Report of Proceedings (RP) (July 20, 2001) at 37. Counsel videotaped Pendleton stating that her earlier account to police had not been completely accurate, and that Clements had permission to enter her apartment, had entered through the window on previous occasions, she had never told him not to enter that way, and that Clements probably had not stolen her property. On the tape, Pendleton asserted her statements were true under penalty of perjury.

¶5 Clements presented the tape to the court and moved to withdraw his guilty plea, arguing there was no longer a factual basis for the plea. The State responded that Pendleton's recantation was not credible because (1) it was not in the form of an affidavit; (2) it involved a domestic violence situation; (3) there was additional evidence, primarily from Pendleton's 14-year-old son, that corroborated her initial account; and (4) shortly after the charged incident, Pendleton had submitted a sworn declaration in a protection order proceeding that was consistent with her account in the police reports and inconsistent with her recantation.

¶6 On July 20, 2001, the judge who had accepted Clements' guilty plea heard argument on the motion to withdraw. Pendleton was present at the hearing but indicated she would assert her right to remain silent if called to testify. The trial court eventually decided not to view the videotape, but permitted defense counsel to make an oral offer of proof of its contents. After stating he would assume Pendleton's retraction was credible, the judge ruled that the unretracted evidence set forth in the certification for determination of probable cause established a sufficient factual basis for the plea. The court denied the motion to withdraw, and sentenced Clements in accordance with the plea agreement.

¶7 Still represented by retained trial counsel, Clements appealed. Counsel filed a statement of arrangements and a

designation of clerk's papers, but failed to comply with deadlines for filing an opening brief. Clements eventually advised the court he had fired his attorney and requested an extension of time to seek financial support and a new attorney. Clements also informed the court that he did not qualify for appointed counsel. After requesting and receiving several additional extensions of time, Clements failed to file an opening brief, and the appeal was dismissed. Clements then filed this personal restraint petition.

## DECISION

¶8 In order to obtain relief by means of a personal restraint petition, a petitioner bears the burden of establishing either an error of constitutional magnitude that gives rise to actual prejudice, or a nonconstitutional error that inherently results in a "complete miscarriage of justice." *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). Because Clements seeks to withdraw his guilty plea, CrR 4.2 is also relevant to our consideration.[2]

¶9 Under CrR 4.2(f), a court must permit withdrawal of a guilty plea whenever necessary to correct a "manifest injustice." This is a demanding standard, and defendant bears the burden of establishing that he has suffered "an injustice that is obvious, directly observable, overt, not obscure." *State v. Branch*, 129 Wn.2d 635, 641, 919 P.2d 1228 (1996). This standard is similar to that for relief under a personal restraint petition.

¶10 *Recantation.* Clements first contends that the court's refusal to permit him to withdraw his guilty plea violated his constitutional right to due process, because Pendleton's recantation of her earlier statements negated

---

[2] Initially, the State asserted that Clements was not entitled to relief by means of a personal restraint petition because he had completed the terms of his sentence and was no longer under any "restraint." *See* RAP 16.4(b). But Clements has submitted uncontroverted supplemental materials indicating he remains under the continuing jurisdiction of the superior court while repaying his legal financial obligations. We therefore reject the State's argument.

the necessary factual basis for his plea and effectively rendered the plea involuntary.

■ ■ ¶11 Recantations are inherently questionable. *State v. Macon*, 128 Wn.2d 784, 801, 911 P.2d 1004 (1996). But a recantation may, in some circumstances, be grounds for a finding of manifest injustice. Much depends upon whether the recanted evidence was the sole basis for conviction. If so, it is an abuse of discretion to deny a new trial. *See State v. Rolax*, 84 Wn.2d 836, 838, 529 P.2d 1078 (1974).

■ ■ ¶12 Two cases were critical to the trial court's analysis here. In *State v. D.T.M.*, 78 Wn. App. 216, 896 P.2d 108 (1995), the defendant entered an *Alford* plea to first degree child molestation. He sought to withdraw his plea after the victim told defense counsel she had fabricated the allegations. The trial court denied the motion. On appeal, the court noted the unique circumstances that attend an evaluation of the factual basis of an *Alford* plea:

> A defendant considering an *Alford* plea undertakes a risk-benefit analysis. After considering the quantity and quality of the evidence against him, and acknowledging the likelihood of conviction if he goes to trial, he agrees to plead guilty despite his protestation of innocence to take advantage of plea bargaining. Because the defendant professes innocence, the court must be particularly careful to establish a factual basis for the plea. Ordinarily, when a defendant pleads guilty, the factual basis for the offense is provided at least in part by the defendant's own admissions. With an *Alford* plea, however, the court must establish an entirely independent factual basis for the guilty plea, a basis which substitutes for an admission of guilt.

*D.T.M.*, 78 Wn. App. at 220 (citations omitted).

¶13 In *D.T.M.*, the child's statements constituted the *sole* evidence establishing a factual basis for the plea. The court observed that under the rule governing motions for a new trial and the holding of *Rolax*, where a defendant has been convicted *solely* on the basis of the testimony of a later recanting witness, "it is an abuse of discretion not to grant a new trial." *D.T.M.*, 78 Wn. App. at 220. The court

concluded that the victim's recantation, *if true*, met the criteria for a new trial, and would have justified withdrawal of the *Alford* plea. But because the witness had not recanted under oath in open court, the court remanded for a hearing:

> [W]e believe the court should have held a hearing to evaluate [the witness's] credibility. If she were to adhere to the facts in her recantation while under oath in open court and subject to cross examination, *Rolax, Powell* and *York* would require the court to permit D.T.M. to withdraw his guilty plea and proceed to trial.

*D.T.M.*, 78 Wn. App. at 221; *see also State v. Powell*, 51 Wash. 372, 98 P. 741 (1909); *State v. York*, 41 Wn. App. 538, 704 P.2d 1252 (1985).

¶14 In *State v. Arnold*, 81 Wn. App. 379, 914 P.2d 762 (1996), the defendant was charged with two counts of child rape. He pleaded guilty to two counts of fourth degree assault. Prior to sentencing, one of the alleged victims provided an affidavit indicating that her statement to police had been untrue. Arnold moved to withdraw his plea, alleging a manifest injustice. The trial court denied the motion. We affirmed, distinguishing *D.T.M.* on two grounds: (1) the defendant in *Arnold* had entered a straight guilty plea, not an *Alford* plea, and (2) additional evidence (including Arnold's own statement) provided independent factual support for the plea. We further noted that Arnold had failed to persuade the trial court of the credibility or reliability of the recantation testimony. *Arnold*, 81 Wn. App. at 386-87.

¶15 Here, the trial court concluded that Clements' case was closer to *Arnold* than to *D.T.M.*, primarily because there was additional unrecanted evidence to support the plea—in particular, evidence that Pendleton's son called his mother to report that Clements was banging on the front door, possibly trying to enter the apartment. Police also found one of Pendleton's book bags in the carport after Clements was arrested. We agree with Clements that a major difference exists between this case and *Arnold* be-

cause Arnold admitted his guilt, while Clements did not. But we also agree with the trial court that this case is more like *Arnold,* because independent evidence also supported Clements' plea.

¶16 A review of factual sufficiency is confined to the record at the time of the plea. *Arnold,* 81 Wn. App. at 382. Clements agreed the plea judge could review the certification for determination of probable cause to determine the propriety of his plea. The certification recites a lengthy history of stormy relations between Pendleton and Clements, including her description of "as many as ten" occasions when Clements entered her apartment without permission, sometimes by climbing to the balcony and disabling the locks on the windows. Pendleton said she did not report these incidents because of Clements' threats and because she did not want him to go to jail. The certification also recites that on the night in question, Pendleton received a telephone call from her son telling her that Clements was pounding on the apartment door and then received a call from Clements placed from her home telephone. By the time Pendleton got home, Clements was gone, as were two book bags and her cell phone battery. She called Clements and asked him to return her things. He came back to the apartment with one book bag. An argument ensued, Clements grabbed Pendleton, her son stepped between them, and Clements left.

¶17 Pendleton's retraction disavowed three aspects of the certification: she stated Clements had always had permission to enter her apartment, that this permission included permission to enter through the window, and that she now believed Clements probably did not take any of her belongings. As the trial court pointed out, however, Pendleton did not disavow other parts of the certification supporting the plea: that Clements was banging on the door seeking entry, then entered through the window; that a book bag was found in the carport by police; that there was an altercation; and that Pendleton's arm was bruised.

■ ¶18 Clements' plea thus did not rest solely on the retracted evidence. "[W]hen there exists *independent* evidence corroborating that of the witness who later seeks to recant his testimony, it is within the sound discretion of the trial court to determine whether to grant a new trial." *Rolax*, 84 Wn.2d at 838; *see also State v. Shaffer*, 72 Wn.2d 630, 635, 434 P.2d 591 (1967). This exercise of discretion ordinarily includes a determination of the reliability of the recantation. *D.T.M.*, 78 Wn. App. at 221.

■ ■ ¶19 The record of the trial court's reliability determination in this case is somewhat confusing. At one point, the court stated that, assuming it would find Pendleton's recantation credible, and deleting all the recanted evidence from the certification of probable cause, nonetheless the remaining evidence was sufficient to establish a factual basis for Clements' plea. But the court later clarified that it was merely assuming Pendleton would testify in accordance with the offer of proof.[3] The court could not conduct any further inquiry into the reliability of the recantation because Pendleton refused to testify at the hearing. In context, however, it is apparent from its ruling that the court did not find Pendleton's recantation reliable, in large part because it was inconsistent with the unretracted evidence in the certification.[4]

¶20 Thus independent evidence supported the plea, and the trial court was not convinced the recantation was

---

[3] Discussions of recantation evidence often merge the issues of reliability and credibility. Reliability is the overriding concern and encompasses all relevant circumstances surrounding the recantation, including possible undue influence, coercion, and any other improper motive or influence. *See Macon*, 128 Wn.2d at 802; *State v. Landon*, 69 Wn. App. 83, 93, 848 P.2d 724 (1993). Credibility amounts to a threshold determination of plausibility that involves more than the demeanor of witnesses. A credibility determination includes an assessment of evidence in light of its rationality, internal consistency, consistency with other evidence, and common experience. *See Carbo v. United States*, 314 F.2d 718, 749 (9th Cir. 1963). In this context, credibility is a component of reliability.

[4] The trial court commented: "I have the son who at eleven o'clock at night calls mom to say that Mr. Clements is banging on the door. Well, if Mr. Clements was welcome in the house, why didn't he get let through the front door? If his normal mode of entry is through the window, why did he knock on the door in the first place? If she didn't have any objection to him entering the home, why didn't she instruct Joshua to let him in the door?" RP (July 20, 2001) at 42.

reliable. Under these circumstances, the decision on a motion to withdraw is an exercise of discretion. On this record, Clements has failed to demonstrate that the trial court abused its discretion, much less made an error meriting relief in a personal restraint petition.[5]

¶21 Clements also maintains his plea was involuntary because he was essentially tricked or coerced into pleading guilty by Pendleton's deceit. Essentially, he takes the position that Pendleton tricked him into believing she would continue to maintain her version of events, and then didn't. This argument was not raised at the time of the motion to withdraw the plea, but we address it because it implicates due process.

¶22 An *Alford* plea is valid if it " 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " *In re Pers. Restraint of Montoya*, 109 Wn.2d 270, 280, 744 P.2d 340 (1987) (quoting *Alford*, 400 U.S. at 31). Such a choice occurs where the defendant " 'intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt.' " *Montoya*, 109 Wn.2d at 280 (quoting *Alford*, 400 U.S. at 37). Establishment of a sufficient factual basis of guilt is not an independent constitutional requirement, but an inadequate factual basis may affect the constitutional voluntariness of the plea because some information about the facts is necessary to the defendant's assessment of the law in relation to the facts. *See In re Pers. Restraint of Hews*, 108 Wn.2d 579, 592, 741 P.2d 983 (1987) (quoting *United States v. Johnson*, 612 F.2d 305, 309 (7th Cir. 1980)).

¶23 If Pendleton was deceitful in her original statements, Clements was aware of it and had to decide whether or not to challenge her evidence at trial. He decided not to

---

[5] We decline Clements' invitation to adopt the rationale of an Arizona decision holding that a defendant should be permitted to withdraw an *Alford* plea whenever he or she has an "objective reason" for reassessing the chance for acquittal. *Duran v. Superior Court*, 162 Ariz. 206, 782 P.2d 324, 326 (1989). *Duran* is based on Arizona policy strongly disfavoring *Alford* pleas. *Duran*, 782 P.2d at 325. Washington has no comparable policy.

do so. Clements had sufficient information about the facts to satisfy due process.

 ¶24 *Ineffective Assistance of Counsel.* Clements also contends he was denied effective assistance of counsel during the plea process and direct appeal. In order to establish ineffective assistance, Clements must demonstrate both that counsel's representation fell below an objective standard of reasonableness, and that prejudice resulted. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also State v. Thomas,* 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). "In satisfying the prejudice prong, a defendant challenging a guilty plea must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *In re Pers. Restraint of Riley,* 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993) (citing *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)). When counsel's alleged error is the failure to investigate exculpatory evidence, the assessment of whether the error prejudiced the defendant involves the likelihood that the evidence " 'would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.' " *State v. Garcia,* 57 Wn. App. 927, 933, 791 P.2d 244 (1990) (quoting *Hill,* 474 U.S. at 59).

¶25 Clements contends that before advising him to plead guilty, counsel should have interviewed Sue Wragge and Leland Sparks, after which counsel would have provided "a more optimistic assessment" of his trial chances and he would not have pleaded guilty. Br. of Pet'r at 52. Clements has submitted affidavits from both Wragge, who is his current girl friend, and Sparks, a friend who was living with Clements at the time of the alleged offense. Wragge and Sparks indicate they could testify that Pendleton was jealous about Clements' relationship with Wragge. On the evening of the alleged offense, Sparks accompanied Clements on one of his visits to Pendleton's apartment and

saw Pendleton slap Clements. On that same evening, Wragge heard Pendleton threaten to call the police if Clements did not come over to her apartment.

¶26 But neither Wragge nor Sparks witnessed the alleged unlawful entry. Moreover, Wragge's effectiveness as a witness was undermined by evidence that she threatened Pendleton to drop the charges. Given these circumstances and the witnesses' close relationship to Clements, defense counsel could reasonably have concluded that their testimony was unlikely to be helpful at trial. Clements has thus failed to demonstrate deficient performance. And in any event, Clements was fully aware of Wragge's and Sparks' potential testimony when he pleaded guilty. Consequently, his conclusory assertions are insufficient to establish a reasonable probability that he would have proceeded to trial had his attorney interviewed them. *See Riley*, 122 Wn.2d at 782.

¶27 Finally, Clements contends he was denied effective assistance of counsel on appeal when counsel failed to file an opening brief or otherwise respond to this court's threat of sanctions. *See State v. Tomal*, 133 Wn.2d 985, 990, 948 P.2d 833 (1997) (mere inaction by appellate counsel is insufficient to establish voluntary abandonment or waiver of right to appeal). He also argues this court violated his due process rights by dismissing the appeal, and contends his appeal should be reinstated.

¶28 Clements' arguments rest on the premise that his appeal was dismissed because appellate counsel failed to file a brief or otherwise respond to several letters from the court. But Clements fired his retained counsel before the due date for the brief, and proceeded to deal directly with this court. This distinguishes his case from the authorities he relies upon. *See Tomal*, 133 Wn.2d at 987 (appeal dismissed after appellate counsel took no action for four years and then failed to file verbatim report); *Evitts v. Lucey*, 469 U.S. 387, 394, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985) (appeal dismissed when counsel failed to comply with appellate rules). In his communications with this

court, Clements stated he did not qualify for assigned counsel, and twice asked for and received extensions of time for his brief. Under these circumstances, the dismissal of his appeal cannot reasonably be characterized as the loss of the right to appeal through attorney neglect.

## CONCLUSION

¶29 We reject Clements' arguments and deny his petition.

COLEMAN and BAKER, JJ., concur.

Review denied at 154 Wn.2d 1020 (2005).