[No. 24448-2-III.   Division Three.   August 14, 2007.]

*In the Matter of the Personal Restraint of* TED LOUIS BRADFORD, *Petitioner.*

*Jacqueline McMurtrie* (of *University of Washington School of Law Clinical Law Program—Innocence Project Northwest*) and *Felix G. Luna* (of *Peterson, Young & Putra*), for petitioner.

*Ronald S. Zirkle, Prosecuting Attorney,* and *Kevin G. Eilmes, Deputy,* for respondent.

¶1 BROWN, J. — We grant the personal restraint petition of Ted Louis Bradford and reverse his 1996 rape and burglary convictions based upon newly discovered DNA (deoxyribonucleic acid) evidence. Considering the disputed evidence, we agree with the conclusion reached by the reference hearing judge that a new trial is warranted even though the DNA evidence does not positively exclude Mr. Bradford. The new evidence, if fully accepted by a jury, would probably change the guilty verdict.

## FACTS

¶2 In 1996, a jury convicted Ted Louis Bradford of first degree rape and first degree burglary, finding he was the man in a nylon stocking mask who broke into the victim's house and sexually assaulted her. He appealed his convictions. The primary issue on direct appeal was the superior court's refusal to suppress the confession Mr. Bradford gave to police at the end of a lengthy interrogation. We affirmed. *State v. Bradford*, 95 Wn. App. 935, 978 P.2d 534 (1999), *review denied*, 139 Wn.2d 1022 (2000). The case facts are found in our previous opinion.

¶3 In 2005, after Mr. Bradford completed serving his confinement time,[1] the Washington State Patrol Crime Lab tested the mask the assailant had placed on the victim's face during the rape. The lab used DNA testing procedures not available in 1995. Personal Restraint Pet., App. 11(d), App. 13, at 3. Philip Hodge is the scientist who conducted the test. He described the testing procedure and the results. The DNA tests excluded Mr. Bradford as a contributor; however, the DNA of another man, identified only as contributor B, was

---

[1] He must still register as a sex offender. *See* RCW 9A.44.130.

found on the face of the mask and on the sticky side of the tape placed over the mask's eye openings before the assault.

¶4 Mr. Bradford filed then filed this personal restraint petition. In response, our chief judge ordered a reference hearing, directing the superior court "to resolve the factual dispute of whether DNA evidence so reduces the possibility that Mr. Bradford is the perpetrator that, when considered with the other evidence admitted at Mr. Bradford's trial, it will probably change the result of that trial." Order for Reference Hr'g, *In re Pers. Restraint of Bradford*, No. 24448--2-III, at 5-6 (Wash. Ct. App. Feb. 21, 2006).

¶5 On September 12 and 13, 2006, the superior court conducted the reference hearing after reviewing the 1996 jury trial transcript and the documents filed with Mr. Bradford's personal restraint petition. The court heard testimony from Mr. Bradford, his former wife, Mr. Hodge, an expert (Dr. Richard Leo) who challenged the reliability of Mr. Bradford's confession, and the detective who took Mr. Bradford's confession.

¶6 We summarize the reference court's findings entered on October 25, 2006:

- The victim was not able to identify Mr. Bradford as the perpetrator. No other eyewitnesses to the crime exist. No scientific analysis established the perpetrator's identity.
- The assault occurred at 9:30 AM when Mr. Bradford was normally at work. At trial, evidence conflicted as to whether Mr. Bradford was at work that day. Mr. Bradford's co-employee witnesses keyed the crime date to the date of Mr. Bradford's vasectomy scheduled later that same day and remembered joking with Mr. Bradford about the vasectomy.
- The State's primary evidence was Mr. Bradford's confession that began, "I probably did it." Finding of Fact III at 3. But his statement varied substantially with the details given by the victim and required consideration of its reliability and weight in light of numerous disagreements between the description and details given by Mr. Bradford and the victim.
- Aside from his confession, the only other evidence linking Mr. Bradford to the crime was the testimony of the victim's neighbor who stated that at some point earlier she had seen Mr. Bradford driving around the neighborhood in a white car.

- The reference judge discounted testimony by Dr. Richard Leo at the reference hearing that Mr. Bradford's confession was unreliable. The jury determined otherwise. And, the court stated there was no guarantee Dr. Leo's testimony would be admissible at a new trial. Therefore, the court gave "little or no weight" to Dr. Leo's testimony. Finding of Fact V at 4.

- Philip Hodge, a forensic scientist at the Washington State Patrol Crime Lab, conducted DNA testing on evidence collected at the crime scene, including a mask the perpetrator put on the victim at the time of the assault. The mask had eyeholes over which tape had been placed, against the inside of the mask. The perpetrator brought the mask with him. The tape had not been disturbed. Mr. Hodge processed the tape in three parts. The sticky side was referenced as Tape A, the shiny side was referenced as Tape B, and the area of the tape exposed through the eyeholes was referenced as Tape C.

- Mr. Hodge tried to clean the shiny side of the tape but could not clean all the residue off the tape. "Thus, any findings from the DNA analysis of the various parts of the tape would always have [the victim's] DNA as a major contributor because she had the most extensive contact with the tape on the mask." Finding of Fact IX at 6.

- On Tape A, Mr. Hodge's analysis revealed the presence of DNA from an unidentified male, contributor B. DNA from the same male was found on Tape C. Only the victim's DNA was found on Tape B, the shiny side of the tape that rested against the victim's face. Mr. Bradford's DNA was not present on any of the tape's surfaces. The court found that "[i]t makes common-sense that a jury could give weight to the proposition that the person who prepared the mask more likely than not is the person who committed the crime, or that Mr. Bradford, if present, would have left DNA on some surface of the mask. Although the proposition is not error-proof, it has substantial evidentiary appeal and weight to this Court." Finding of Fact XVI at 8.

- The court found Mr. Hodge's testimony "is evidence that a jury would consider and more probably than not, would cast some great and substantial doubt about whether Mr. Bradford was at the scene of the crime. This is so given all the disputed evidence of the alibi, for which there was strong evidence by the defense, but equally good evidence by the prosecution, the discrepancies between the statement given by Mr. Bradford and the victim's detailed description of the crime, and the difference between the description given of the perpetrator's height and Mr. Bradford's height." Finding of Fact XVII at 8-9.

- Finally, the court found that "Mr. Bradford has produced new evidence, not previously available, that when considered with the other evidence admitted at Mr. Bradford's trial, would probably change the result of that trial." Finding of Fact XVII at 9.

¶7 Mr. Bradford and the State filed supplemental briefs with this court after the reference hearing. The State does not challenge the test results, that Mr. Bradford's DNA was not found on the mask, and that an unknown male contributor's DNA was found on the sticky or protected side of the tape. But, the State challenges findings of fact XV through XVIII, related to whether the new evidence would probably change the result of the trial.

## ISSUE

¶8 Would the newly discovered DNA evidence, when considered in the context of the other evidence, probably change the result of Mr. Bradford's trial, as determined by the superior court in the reference hearing?

## STANDARD OF REVIEW

¶9 The court reviews findings of fact from a reference hearing for substantial evidence to support such findings of fact. It reviews any legal conclusions flowing from such findings and testimony de novo. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873-74, 16 P.3d 601 (2001). Mixed questions of law and fact are reviewed de novo. *Id.*

## ANALYSIS

¶10 Newly discovered evidence is grounds for relief from personal restraint if the new evidence requires vacation of the conviction in the interests of justice. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 319, 868 P.2d 835 (1994). Evidence is newly discovered if it " '(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely

cumulative or impeaching.' " *Id*. at 319-20 (emphasis omitted) (quoting *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981)). The first requisite is our sole focus.

¶11 The State relies upon *State v. Riofta*, 134 Wn. App. 669, 142 P.3d 193 (2006). There, the superior court denied Mr. Riofta's motion under RCW 10.73.170 for postconviction DNA testing of a hat worn by the shooter while committing the first degree assault for which he (Riofta) was convicted. Mr. Riofta argued that his request should have been granted in light of the weaknesses in the State's case; DNA testing would provide significant new information as to who wore or did not wear the hat; and any absence of his DNA from the hat in conjunction with the presence of the DNA of a convicted felon would establish his innocence on a "more probable than not" basis, as required for postconviction testing by RCW 10.73.170(3). *Id*. at 679.

¶12 The *Riofta* court affirmed the superior court's denial of the motion for DNA testing, holding that the facts alleged by Mr. Riofta did not satisfy the requirement of RCW 10-.73.170(2)(a)(iii) because accurate DNA testing had been available at the time of trial. *Id*. at 684. In dicta, the court observed that the DNA evidence was not "material to the identity of the perpetrator," as required by RCW 10.73-.170(2)(b), because the DNA testing would not show who wore the hat at the critical time. *Id*. at 685.

■ ■ ¶13 Here, the State argues that the evidence of another male's DNA on the side of the tape placed against the mask does not exclude Mr. Bradford as the perpetrator. Thus, it is not evidence that would "probably change the result of the trial," when taken with Mr. Bradford's confession. *Lord*, 123 Wn.2d at 320. Mr. Bradford argues Mr. Hodge's testing procedures minimized the possibility that someone other than contributor B was involved. Further, Mr. Bradford points to discrepancies between his confession and the victim's rape description, his alibi defense, and the victim's disparate description of her assailant as compared to him.

¶14 *Riofta* is distinguishable because here the evidence shows the unidentified male's DNA came from a place on

the mask that made it very likely that the unidentified male was the one who placed the tape on the mask. Because the eyeholes were taped, the reasonable inference is that the person placing the tape was attempting to fashion something that would block the mask wearer's ability to observe the perpetrator. In *Riofta*, the hat was merely present in a vehicle when it was stolen. It had not been modified by the perpetrator, and DNA evidence in the hat was not evidence that someone other that Mr. Riofta was the shooter.

¶15 The State points to Detective Scherschligt's testimony that Mr. Bradford told him he had access to handcuffs at the time of the rape. The perpetrator used handcuffs during the rape. But Mr. Bradford's wife testified at his trial that she and Mr. Bradford had used handcuffs during sex, that she had borrowed the handcuffs from a woman she worked with, and that she had them in her possession for only a couple of days in November 1995, more than a month after the rape occurred. Similarly, the State and Mr. Bradford reargue the strengths and weaknesses of the alibi evidence, but the reference judge was in a position to weigh these differences when deciding in favor of a new trial.

¶16 The most persuasive evidence against Mr. Bradford at trial was his confession. The jury chose to believe the confession, even though the defense at trial attacked its reliability based upon the circumstances in which it was given and its factual inconsistencies with the victim's statement about what happened. Again, the reference judge determined that the jury probably would have decided differently on the issue of the confession's reliability had it known about the DNA evidence.

¶17 Given all, the reference court's conclusion that the DNA evidence would probably change the result of the trial is supported by the court's findings. Under *Brett*, our review of the court's conclusion is de novo. We agree with the trial court. The inference is that the unidentified male, contributor B, put the tape on the mask to block the victim's observation of him. If no male DNA had been recovered, then one could infer that the perpetrator used gloves while handling the tape. But since male DNA was present, and it

was not Mr. Bradford's, the inference is that the unidentified male devised the mask. And, the victim's testimony that the assailant kept pushing the mask back over her eyes supports an inference that Mr. Bradford was not the perpetrator; otherwise, his DNA would have been present.

¶18 The inference is that the unidentified male devised the mask. The factual disputes regarding Mr. Bradford's confession and alibi, like the other factual disputes noted by the parties, remain open questions for a jury to resolve upon retrial and in the context of the new DNA evidence. And, we note the judge, in making this determination, did not rely on expert testimony regarding the unreliability of Mr. Bradford's confession, since that testimony might not be admissible at retrial.

¶19 Petition granted.

SWEENEY, C.J., and STEPHENS, J., concur.