# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>JENEAL MARIE THOMPSON,<br><br>                          Petitioner. | No. 57767-4-II<br><br>UNPUBLISHED OPINION |

CHE, J. — Jeneal M. Thompson filed a timely petition to vacate her fourth degree assault conviction for assaulting her 14-year-old daughter, KJH, after KJH recanted her statement that Thompson assaulted her. The trial court transferred the petition to us as a personal restraint petition (PRP).

Thompson pleaded guilty to one count of fourth degree assault, deputies observed marks on KJH's neck consistent with signs of being strangled, KJH's 17-year-old sister's statement to police was consistent with KJH's description of events, and video evidence showed that Thompson dragged KJH by the hood of her sweatshirt. Thompson requests that we grant her PRP and remand for the trial court to vacate her conviction or, alternatively, that we remand for the trial court to hold a reference hearing.

We deny Thompson's request for relief because there is a sufficient and independent factual basis for her conviction, such that she cannot establish the required prejudice.

FACTS

I. BACKGROUND

In January 2022, Thompson argued with KJH, her 14-year-old daughter. According to KJH, Thompson ordered KJH to go outside, shovel snow, and bring in groceries, but KJH refused to bring in the groceries. Thompson "grabbed [KJH's] hood and started pulling [KJH] inside the house." Br. of Resp't at App. 22. Thompson grabbed KJH by the throat and strangled her, then covered KJH's mouth with her hands, restricting KJH's ability to breathe.

ZB, Thompson's 17-year-old daughter, witnessed Thompson grab the back of KJH's hood and drag her inside. ZB did not see Thompson strangle KJH, but she heard KJH twice tell Thompson that she was "choking her." Br. of Resp't at App. 14. ZB's partial video recording of the altercation showed Thompson walking KJH across the living room holding KJH's hood. On the audio from the recording, KJH can be heard saying, "[Y]ou're choking me." Br. of Resp't at App. 14.

Thompson denied grabbing KJH's throat and said she pulled KJH into the house by the sleeve of her hoodie, not the hood. But two deputies observed marks on KJH's neck that were consistent with signs of being strangled. One deputy noted "very visibl[y] red, what appeared to be finger marks, on both sides of [KJH's] neck." Br. of Resp't at App. 17.

The State charged Thompson with second degree assault. Before Thompson entered her plea, the State learned that, in a prior case, KJH had recanted testimony alleging Thompson abused her. The State then interviewed KJH. During this interview, KJH said that she recanted her testimony in the previous case because Thompson made her. But KJH's statements regarding the assault in this matter did not change. After interviewing KJH, the State reduced

the charge to fourth degree assault because there were disputes of fact regarding whether Thompson strangled KJH by pulling on her hood and whether Thompson intended to suffocate KJH when she put her hand over KJH's mouth.

In April 2022, Thompson pleaded guilty to fourth degree assault, stating, "In [L]ewis C[oun]ty WA on 1-3-22 I grabbed my daughter and pulled her into the house." Clerk's Papers at 10. During Thompson's guilty plea colloquy, Thompson confirmed that she grabbed her daughter and pulled her into the house. The trial court sentenced Thompson to ten days of electric home monitoring, with the remainder of a 364-day sentence suspended.

## II. POST-CONVICTION

In December 2022, less than a year after her sentence became final, Thompson moved to vacate her conviction under CrR 7.8 based on KJH's declaration wherein she recanted her previous version of events and stated, "My mom . . . did not physically harm me in any way." Br. of Resp't at App. 81; *see also* Pet. & Decl. for Ord. Vacating Conviction at 1, 6 (Lewis County Super. Ct., Dec. 13, 2022). Thompson also attached a declaration from ZB, which stated that KJH's recantation was voluntary and that Thompson had not contacted KJH. ZB did not recant the statements she made to the police confirming KJH's account on the night of the incident.

The trial court treated Thompson's petition as a CrR 7.8 motion. Determining that resolution of Thompson's motion would not require a factual hearing and that Thompson had not made a substantial showing that she was entitled to relief, the trial court transferred Thompson's motion to this court as a PRP.

ANALYSIS

PRP NEWLY DISCOVERED EVIDENCE

Thompson argues that KJH's recantation of her testimony constitutes newly discovered evidence and that, in the interest of justice, it warrants a "new trial" without a further showing of prejudice.[1] Suppl. Br. of Pet'r at 8-9. We disagree.

A.      *Legal Principles*

"Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5" is a basis, among others, for relief from judgment. CrR 7.8(b)(2). To obtain relief through a PRP, a person under restraint as defined in RAP 16.4, must establish either (1) a constitutional error resulting in actual and substantial prejudice or (2) a non-constitutional error constituting a fundamental defect that inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018). We review claims of newly discovered evidence warranting a new trial for constitutional error, meaning the petitioner must show, by a preponderance of the evidence, actual and substantial prejudice. *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 12, 513 P.3d 769 (2022); *see also Meredith*, 191 Wn.2d at 306. To show actual and substantial prejudice, a petitioner must demonstrate "that the outcome would more likely than not have been different had the

---

[1] In her petition, Thompson submits that as a victim of domestic violence with a former romantic partner, she has grounds to withdraw her guilty plea under the circumstances of this appeal— namely, where the incident in question involved one of her daughters. But Thompson does not show that she may withdraw her guilty plea for a gross misdemeanor or misdemeanor offense committed against a party who is not the person that has committed domestic violence against Thompson.

alleged error not occurred." *In re Pers. Restraint of Davis*, 200 Wn.2d 75, 86, 514 P.3d 653 (2022).

Where the petitioner pleaded guilty, CrR 4.2 is also implicated. *In re Pers. Restraint of Clements*, 125 Wn. App. 634, 640, 106 P.3d 244 (2005). Trial courts must allow a defendant to withdraw their guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f). Manifest injustice is a demanding standard and the defendant must establish that they suffered an injustice that is obvious, directly observable, overt, and not obscure. *Clements*, 125 Wn. App. at 640. Enforcing a plea in light of a recantation constitutes a manifest injustice where the recanted testimony was the sole basis for conviction, such as with an *Alford* plea.[2] *Clements*, 125 Wn. App. at 641.

B.    *Thompson Fails to Show a Manifest Injustice under CrR 4.2, and Actual and Substantial Prejudice*

Thompson contends that KJH's recantation meets the requirements of the five-factor newly discovered evidence test.[3] We need not decide this issue because Thompson does not show that the newly discovered evidence caused actual and substantial prejudice or a manifest injustice, which is required for her to obtain collateral relief. For this same reason, to the extent that Thompson is also arguing that ZB's declaration constitutes newly discovered evidence, we

---

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] The trial court may not grant a defendant a new trial based on the newly discovered evidence unless the evidence "(1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching." *In re Pers. Restraint of Fero*, 190 Wn.2d 1, 15, 409 P.3d 214 (2018).

need not decide that issue. As explained below, the outcome of Thompson's trial, or guilty plea in this circumstance, would not have been different because a sufficient and independent factual basis exists for her conviction.

Here, Thompson must show that enforcing her guilty plea in light of a recantation constitutes a manifest injustice under CrR 4.2. *Clements*, 125 Wn. App. at 640, 641 (CrR 4.2 is implicated where the defendant pleaded guilty). But Thompson fails to show that withdrawal of her guilty plea is necessary to correct a manifest injustice.

In *State v. D.T.M.*, the defendant moved to withdraw his *Alford* plea because the victim recanted her testimony. 78 Wn. App. 216, 218, 896 P.2d 108 (1995). Because the victim's testimony was the sole factual basis supporting the guilty plea, Division Three of this court held it was an abuse of discretion not to hold an evidentiary hearing to determine the credibility of the recantation. *Id.* at 221. But we have found no manifest injustice where testimony from a non-recanting witness supports the conviction, and the defendant made a straight guilty plea. *State v. Arnold*, 81 Wn. App. 379, 386, 914 P.2d 762 (1996); *see also Clements*, 125 Wn. App. 634. In part, this is because a straight guilty plea can provide a sufficient and independent factual basis for the conviction, in the form of the defendant's written statement admitting they committed the crime. *See In re Pers. Restraint of Reise*, 146 Wn. App. 772, 782-83, 192 P.3d 949 (2008). A defendant who pleads guilty admits legal and factual guilt for the charged crime. *Id.* at 782.

In *Arnold*, the defendant pleaded guilty to two counts of fourth degree assault. *Id.* at 381. The charges were brought based on the allegations of two child victims and their aunt. *Id.* Before sentencing, one of the child victims recanted their statement and the defendant moved to withdraw his guilty plea. *Id.* at 382. After evaluating the recantation, the trial court denied the

defendant's motion to withdraw his guilty plea and Arnold appealed, arguing that withdrawal of his guilty plea was necessary to avoid a manifest injustice because the recantation indicated his innocence. *Id.* Division One of this court rejected Arnold's argument because there was independent evidence in the record at the time of the plea that supported a finding of guilt. *Id.* at 386-87. The court specifically noted that the defendant entered a straight guilty plea, and that "there was evidence other than the statement of the recanting witness which provided independent evidence of [the defendant's] guilt." *Id.* The court distinguished Arnold's case from *D.T.M.*, holding Arnold's guilty plea still had factual support because other witness statements had not been recanted, and Arnold's own guilty plea provided additional corroboration. *Id.* at 386-87.

Here, like in *Arnold*, while Thompson wrote facts that she believed supported a guilty finding, witnesses, other than KJH, provided independent evidence of Thompson's guilt. ZB observed Thompson grab the back of KJH's hood and drag her inside, ZB video recorded part of the altercation showing Thompson holding KJH by the hood and walking her across the living room while KJH could be heard saying, "[Y]ou're choking me," and a deputy observed red marks on KJH's neck consistent with being strangled. Br. of Resp't at App. 5-7. ZB did not recant the statements she made to the police confirming KJH's account made on the night of the incident. And even assuming that ZB's post-conviction declaration is newly discovered evidence, it does not deny that the assault occurred. ZB's declaration only addresses the circumstances of KJH's preparation of her recantation declaration. So, even though KJH

recanted her statement, sufficient independent evidence exists to support Thompson's conviction. Thus, Thompson does not meet her burden to show a manifest injustice under CrR 4.2.[4]

For the same reason, Thompson fails to show actual and substantial prejudice—"that the outcome would more likely than not have been different had the alleged error not occurred." *Davis*, 200 Wn.2d at 86. Thus, she has not shown the prejudice necessary for us to grant her PRP.

Thompson nevertheless contends that since newly discovered evidence requires a new trial in the interest of justice, "no further showing of prejudice is required, because allowing the conviction to stand would be a complete miscarriage of justice." Suppl. Br. of Pet'r at 9-10. This is a conclusory assertion. Thompson makes no argument regarding how KJH's recantation inherently results in a complete miscarriage of justice. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 138, 267 P.3d 324 (2011) (explaining that we do not make arguments for the parties); *see also* RAP 10.3(a)(6) (explaining that we do not consider issues that are not argued). Even if KJH's original statements to police were neutralized by her recantation, other independent evidence amply supports Thompson's guilt for the charge.

Thompson cites to *Bradford* for the proposition that a court may grant a PRP based on newly discovered evidence without separately analyzing prejudice, but her contention is

---

[4] Alternatively, Thompson contends that there are unresolved factual disputes regarding the credibility of KJH's recantation entitling her to an evidentiary hearing. We will transfer a PRP to the trial court for an evidentiary hearing "if the petitioner makes a prima facie showing of actual prejudice, but we cannot determine the merits of [their] contentions solely on the record." *State v. Harris*, 4 Wn. App. 2d 506, 519, 422 P.3d 482 (2018). Because Thompson has not made even a prima facia showing of actual prejudice, she does not meet her burden for an evidentiary hearing.

inaccurate.[5]  Suppl. Br. of Pet'r at 9-10.  While Thompson is correct that *Bradford* did not use

the word "prejudice" in its recitation of the rules or its analysis, the opinion did analyze

prejudice.  The issue statement in *Bradford* reads, "Would the newly discovered DNA evidence,

when considered in the context of the other evidence, *probably change the result of Mr.*

*Bradford's trial*, as determined by the superior court in the reference hearing?"  *Compare* 140

Wn. App. at 129 (emphasis added), *with Davis*, 200 Wn.2d at 86 (To show actual and substantial

prejudice, a petitioner must demonstrate "that the outcome would more likely than not have been

different had the alleged error not occurred.").  Though stated in different terms, the issue

statement in *Bradford* expresses the prejudice analysis.  Therefore, Thompson's reliance on

*Bradford* is misplaced.

Thompson fails to show a manifest injustice under CrR 4.2, and fails to show actual and

substantial prejudice.  Thus, we deny her request for relief.

---

[5] *In re Pers. Restraint of Bradford*, 140 Wn. App. 124, 131-32, 165 P.3d 31 (2007).

No. 57767-4-II

CONCLUSION

We deny Thompson's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, P.J.

Price, J.