218 P.3d 924 (2009)
In the Matter of the Personal Restraint of Clyde R. SPENCER, Petitioner.
No. 37229-1-II.
Court of Appeals of Washington, Division 2.
October 13, 2009.
*926 Peter A. Camiel, Attorney at Law, Seattle, WA, for Petitioner.
Michael C. Kinnie, Kimberly Robert Farr, Attorney at Law, Vancouver, WA, for Respondents.
VAN DEREN, C.J.
¶1 Clyde R. Spencer entered an Alford plea[1] and served nearly 20 years in prison for the sexual abuse of his son, daughter, and stepson. In 2004, Governor Gary Locke conditionally commuted his sentence of imprisonment to community custody after a review of the relevant files relating to Spencer's case. Spencer then filed a personal restraint petition (PRP) with new evidence in the form of declarations by his now-adult son and daughter, stating that Spencer never abused them and that they never observed any abuse of Spencer's stepson. Spencer also submitted the 1985 medical reports from examinations of his daughter and stepson that the State did not produce until after directed to do so by the Ninth Circuit years after Spencer entered his Alford plea; these reports indicated no physical injury or abuse. After we remanded to the trial court for a reference hearing, the trial court issued findings of fact that the son and daughter's testimony under direct and cross-examination at the hearing was consistent with the declarations Spencer filed with his PRP. We hold that, under the facts of this case, the recantations that remained consistent throughout direct and crossexamination, coupled with the significant irregularities in how the case was prosecutedincluding the State's withholding of the medical examinations, and the disclosure that the mother of one of the alleged victims was having an affair with the investigation's supervising detectiverequire that we grant Spencer's petition and remand for withdrawal of his plea.

FACTS
¶ 2 Spencer is required to register as a sex offender based on his convictions following the order of conditional commutation of his sentence of incarceration entered by former Governor Gary Locke. He, thus, remains under personal restraint;[2] he filed this PRP and asked that we either vacate his conviction or remand to the trial court for a reference hearing to determine whether he should be allowed to withdraw his plea and proceed to trial. We granted his request for a reference hearing, which was held on July 10, 2009. The record on appeal in the PRP now contains the transcript of the reference hearing, as well as additional briefing by Spencer and the State.
¶3 The record[3] reflects that on May 16, 1985, Spencer entered an Alford plea to seven counts of first degree statutory rape and four counts of complicity to commit first degree statutory rape. The identified victims were his two children, K.S. (then five years old) and M.S. (then eight years old), and his stepson, M.H. (then five years old). The counts were as follows:
Count I- Statutory Rape in the First Degree- named victim [K.S.].
Count II- Statutory Rape in the First Degree- named victim [M.S.].
(Count 1 and Count 2) are pre SRA

*927 Count III- Statutory Rape in the First Degree- named victim [K.S.].
Count VII- Statutory Rape in the First Degree- named victim [M.S.].
Count IX- Complicity to Statutory Rape in the First Degree- [M.S.] involved in sexual intercourse with [K.S.] at the direction of the defendant.
Count X- Complicity to Statutory Rape in the First Degree- [M.S.] involved in sexual intercourse with [M.H.] at the direction of the defendant.
Count XII- Statutory Rape in the First Degree- named victim [M.H.].
Count XIII- Complicity to Statutory Rape in the First Degree- [M.H.] involved in sexual intercourse with [M.S.] at the direction of the defendant.
Count XIV- Complicity to Statutory Rape in the First Degree- [M.H.] involved in sexual intercourse with [K.S.] at the direction of defendant.
Count XV- Statutory Rape in the First Degree- named victim [M.H.].[[4]]
Count XVI- Statutory Rape in the First Degree- named victim [M.H.].
Br. of Resp't at 1-2. The trial court sentenced Spencer to two life terms for counts I and II to run consecutively, plus nine 171-month terms of imprisonment for counts III, VII, IX, X, and XII through XVI to run consecutively.
¶4 During his imprisonment, Spencer unsuccessfully moved to vacate his guilty pleas. Spencer then unsuccessfully filed a PRP in our court and a petition for review by our Supreme Court. He also filed a petition for writ of habeas corpus in United States District Court for the Western District of Washington. The district court denied the petition but, on appeal, the United States Court of Appeals for the Ninth Circuit remanded for an evidentiary hearing on various issues, including whether Spencer had been competent to enter a guilty plea and whether the State failed to produce medical reports of the children that showed no evidence of physical abuse. Spencer v. Klauser, 70 F.3d 1280, 1995 WL 710610 (9th Cir. Nov.30, 1995) (unpublished).
¶5 On remand, the district court held the evidentiary hearing and denied Spencer's petition. The Ninth Circuit affirmed after determining that "[t]here is no reasonable probability that production of the medical reports ... would have caused Spencer to choose to go to trial rather than to plead guilty." Spencer v. Klauser, 129 F.3d 127, 1997 WL 686029 at *1 (9th Cir. Oct. 30, 1997).
¶6 On December 23, 2004, Governor Gary Locke issued a conditional commutation of Spencer's sentence. Governor Locke articulated several reasons for his decision: (1) Clark County officials withheld medical reports that showed no physical injury to the children, "despite the allegations of severe, repeated sexual abuse of the children"; (2) although the children stated that Spencer photographed them during the charged acts, no photographs were ever discovered; (3) an independent review of the case by a King County prosecutor[5] showed "significant problems" with the way the police interviewed the children and internal inconsistencies in the children's statements; and (4) a supervising Clark County detective was involved in an affair with Spencer's wife (M.H.'s mother) during the investigation. Br. of Pet'r App. 10 at 1. The commutation required Spencer to complete three years of supervision by the Department of Corrections, which he has done.
¶7 Spencer filed the present PRP following his release to community supervision. He argued that new evidence not previously known or available demonstrates that he did not commit the sex offenses. He submitted two sworn statements, one each from M.S. and K.S. Spencer also argued that the State withheld exculpatory evidence in the form of *928 physical examinations of K.S. and M.H. that was inconsistent with their allegations of abuse.[6] He submitted these reports, which he finally obtained only after the Ninth Circuit ordered an evidentiary hearing.
¶8 M.S.'s sworn statement said that his father never molested him and that he never saw his father molest K.S. or M.H. K.S.'s sworn statement said that she has no memory of being molested by her father and also has no recollection of any sexual activity involving M.S. or M.H. K.S. added that she believes that "if I had been sexually abused in the manner described in the police reports alleged against my father, I would have a memory of this having occurred." Br. of Pet'r App. 9 at 2.
¶9 We ordered Clark County Superior Court to conduct a reference hearing to allow Spencer to present live testimony of recanting witnesses K.S. and M.S. In particular, we directed the superior court to issue findings of fact as to whether these witnesses testified consistently with their sworn affidavits provided by Spencer in support of his PRP during direct and cross-examination. At the conclusion the court stated:
The parties agree that Exhibit 2 is an affidavit that was provided in support of the personal restraint petition by [M.S.] and dated February 27, 2006.
[M.S.] testified today. I've reviewed his affidavit prior to coming onto the bench, and I've reviewed it as I listened carefully to his testimony. He obviously testified consistently with the allegations that were made in that affidavit.
Similarly, with regard to [K.S.], Exhibit 1 is a declaration, a two-page declaration, that she signed on September 14, 2007, and provided to the court of appealswas provided to the court of appeals in support of her personal restraintthe personal restraint petition of Mr. Spencer.
I've reviewed that document before I came into the court today and reviewed it as I listened carefully to her testimony. It's obvious that she didn't say anything that was inconsistent and testified consistently with that declaration while she was on the stand.
Report of Proceedings at 102.
¶10 The superior court issued the following findings of fact:
1. On February 27, 2006, [M.S.] signed a five-page declaration, which was presented to the Court of Appeals in support of Clyde Ray Spencer's personal restraint petition. The declaration was marked as Exhibit 2 during the reference hearing, and admitted without objection. In the declaration, [M.S.] recanted allegations that, as a child, he had been sexually abused by his father, Clyde Ray Spencer. [M.S.] also denied that his father molested either his sister or step-brother in his presence.
2. On July 10, 2009, [M.S.] appeared before the Clark County Superior Court, and was sworn under oath. He testified at the reference hearing, and was subjected to both direct and cross-examination. During his testimony, [M.S.] testified consistent with the factual statements made in his sworn declaration. He identified the declaration, and indicated that its contents were true. Although his recollection was not perfect as to the dates and times at which events occurred, none of the factual statements made during his testimony were inconsistent with the declaration of February, 27, 2006.
3. On September 14, 2007, [K.S.] signed a two-page declaration, which was presented to the Court of Appeals by defendant Clyde Ray Spencer in support of his personal restraint petition. The declaration was marked as Exhibit 1, during the reference hearing and admitted without objection. In the declaration, [K.S.] indicated that she could not recall any instances of childhood sexual abuse by her father, Clyde Spencer, against her, or her brother *929 or stepbrother. She believed that she would recall instances of sexual abuse, of the type described in police reports concerning this investigation, if that abuse had actually occurred.
4. On July 10, 2009, [K.S.] appeared before the Clark County Superior Court, and was sworn under oath. She testified at the reference hearing, and was subjected to both direct and cross-examination. During her testimony, [K.S.] testified consistent with the factual statements made in her sworn declaration. She identified the declaration, and asserted that its contents were true. None of the factual assertions made during her testimony were inconsistent with the declaration of September 14, 2007.
Findings of Fact on Reference Hearing, State v. Spencer, No. 85-1-00007-2 (Clark County Super. Ct., Wash. July 13, 2009) at 2-3.
¶11 The State now contends that after M.S.'s testimony, his declaration is "flawed to the point where it is of no value" and after K.S.'s testimony, her testimony is "fact neutral" because she "has continually maintained that she does not remember." Supp. Br. of Resp't at 9. Spencer argues that "[t]he recantations completely undermine the factual basis for the [Alford] pleas." Supp. Br. of Pet'r at 9.

ANALYSIS

I. Personal Restraint Petition Standard of Review
¶12 As a threshold matter, a PRP may not renew an issue raised and rejected on direct appeal unless the interests of justice require relitigation of that issue. In re Pers. Restraint of Taylor, 105 Wash.2d 683, 688, 717 P.2d 755 (1986). The petitioner may raise new issues, however, including both errors of constitutional magnitude that result in actual and substantial prejudice and nonconstitutional errors that constitute a fundamental defect and inherently result in a complete miscarriage of justice. In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990); In re Pers. Restraint of Hews, 99 Wash.2d 80, 87, 660 P.2d 263 (1983).
¶13 Whether a challenge is based on constitutional or nonconstitutional error, a petitioner must support a PRP with facts or evidence upon which the claims of unlawful restraint are based and not rely solely upon conclusory allegations. Cook, 114 Wash.2d at 813-14, 792 P.2d 506. The evidence presented must consist of "more than speculation, conjecture, or inadmissible hearsay." In re Pers. Restraint of Rice, 118 Wash.2d 876, 886, 828 P.2d 1086 (1992).
¶14 To obtain an evidentiary hearing, "the petitioner must demonstrate that there is competent, admissible evidence to establish" facts that would entitle the petitioner to relief. Rice, 118 Wash.2d at 886, 828 P.2d 1086. "If the petitioner's evidence is based on knowledge in the possession of others, he may not simply state what he thinks those others would say, but must present their affidavits or other corroborative evidence." 118 Wash.2d at 886, 828 P.2d 1086.
¶15 Under RAP 16.4, we "will grant appropriate relief to a petitioner" if "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding." RAP 16.4(a), (c)(3). The RAP 16.4(c)(3) standards for a new sentencing proceeding also apply to a motion for new trial based upon newly discovered evidence. In re Pers. Restraint of Brown, 143 Wash.2d 431, 453, 21 P.3d 687 (2001) (citing In re Pers. Restraint of Lord, 123 Wash.2d 296, 319-20, 868 P.2d 835 (1994)). The petitioner must establish:
"that the evidence (1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence;[[7]] (4) is material; and (5) is *930 not merely cumulative or impeaching. The absence of any one of the five factors is grounds for the denial of a new" proceeding.
Brown, 143 Wash.2d at 453, 21 P.3d 687 (quoting State v. Williams, 96 Wash.2d 215, 222-23, 634 P.2d 868 (1981)l); see also CrR 7.5(a)(3).
¶16 Generally, if a petitioner enters a guilty plea, the petitioner must show that a new trial is necessary "`to correct a manifest injustice,'" but "a guilty plea ... generally bars a later collateral attack based on newly discovered evidence." State v. Mendoza, 157 Wash.2d 582, 587, 141 P.3d 49 (2006) (quoting CrR 4.2(f)); In re Pers. Restraint of Reise, 146 Wash.App. 772, 783-84, 192 P.3d 949 (2008). Spencer, however, entered an Alford plea.
¶17 Neither party disputes that with an Alford plea, a manifest injustice exists if the new evidence, when viewed in light of the entire record, changes the factual basis of the plea. E.g., State v. Dixon, 38 Wash. App. 74, 77, 683 P.2d 1144 (1984). "In the context of an Alford plea, a manifest injustice exists if the newly discovered evidence, when viewed in balance with the record, changes the factual basis for the plea." In re Pers. Restraint of Ice, 138 Wash.App. 745, 749, 158 P.3d 1228 (2007) (footnote omitted), review denied, 163 Wash.2d 1008, 180 P.3d 784 (2008). The State opposed Spencer's petition on the ground that the new evidence did not change the factual basis of his plea. The State now contends after the reference hearing that the testimony undermines the declarations.

II. New Evidence Changes Factual Basis of Spencer's Alford Plea

A. M.S.'s Affidavit
¶18 When Spencer first filed his PRP, the State argued that M.S.'s statement was unreliable and not credible because it was "of interest that [M.S.] had never indicated any issues with what he had told the police back in 1985 until after he had an opportunity to meet with and talk to his father once he had become an adult." Br. of Resp't at 5. The State relied on In re Pers. Restraint of Clements, 125 Wash.App. 634, 648, 106 P.3d 244 (2005), in which Division One of our court affirmed the trial court's decision denying Clements' request to withdraw his Alford plea based on a victim's recantation. After a recanting witness "refused to testify at the hearing," the trial court apparently "did not find [the witness's] recantation reliable, in large part because it was inconsistent with the unretracted evidence." Clements, 125 Wash.App. at 644, 106 P.3d 244.
¶19 Spencer distinguished Clements by noting that the retracting victim refused to testify at a subsequent evidentiary hearing and the victim's original inculpating statement was corroborated by another witness and other evidence. In contrast to Clements, here there were two consistent witness recantations and neither recanting witness expressed an unwillingness to testify. Furthermore, the only evidence against Spencer was the alleged victims' statements, which Spencer later learned were not corroborated by medical examinations, thereby supporting his statements about the abusethat he did not remember committing any such acts if they occurred.
¶20 We agreed with Spencer that Clements is distinguishable. First, in Clements, the trial court had the opportunity to assess the credibility and reliability of the statement before it reached the court of appeals. Here, the trial court that accepted Spencer's Alford plea did not hear the recantations until we remanded for a reference hearing, after which the trial court determined that the now-adult children's recantations under oath and direct and cross-examination were consistent with the declarations filed to support Spencer's PRP.[8] The trial *931 court, reading our charge narrowly, expressly did not determine credibility. But as stated in Clements, "If [the victim] were to adhere to the facts in her recantation while under oath in open court and subject to cross examination, Rolax, Powell and York would require the court to permit D.T.M. to withdraw his guilty plea and proceed to trial." Clements, 125 Wash.App. at 642, 106 P.3d 244 (quoting D.T.M., 78 Wash.App. at 221, 896 P.2d 108) (citing State v. Rolax, 84 Wash.2d 836, 529 P.2d 1078 (1974); State v. Powell, 51 Wash. 372, 98 P. 741 (1909); State v. York, 41 Wash.App. 538, 704 P.2d 1252 (1985)). And the trial court here determined that M.S. and K.S.'s statements remained consistent under cross-examination by the State.
¶21 Second, the facts relied on in Clementsspecifically, a recanting witness's refusal to testify and the existence of corroborating evidence-are not relied on by the State to show the unreliability of M.S.'s adult statement. The only argument the State made regarding M.S.'s declaration's unreliability was its timing.[9] During cross-examination, the State confronted M.S. with a 2003 letter from him urging Governor Locke not to commute his father's sentence; a letter, M.S. explained, that was written by his mother for his signature. The record now contains a 2006 letter written by M.S. urging the Clemency and Pardons Board to recommend his father for a pardon.
¶22 M.S. said that he had no contact with his father for 20 yearsbetween 1984 and 2004and that a newspaper reporter approached him in 2005 and made a connection between the two. M.S. also indicated that he originally told investigators before Spencer was charged that Spencer did not abuse him, but he (M.S.) felt pressured to change his story. M.S. adds that he wanted to set the record straight but did not know how to do so.
¶23 M.S.'s declaration is not internally inconsistent and it explains the timing of his statement made after he became an adult. Consequently, we declined the State's invitation to rule that M.S.'s statement is unreliable based solely on its timing. After remand for the reference hearing, the trial court issued findings that M.S. presented testimony consistent with his written declaration and the record shows his response to the State's attempt to undermine his credibility with the 2003 letter as well as a later letter consistent with his recantation testimony.

B. K.S.'s Affidavit
¶24 The State next argued that K.S.'s statement was not a full recantation because it is "merely an indication that she doesn't remember."[10] Br. of Resp't at 6. K.S., however, did not simply state that she did not recall the abuse; she stated that she believes she would remember if she, M.S., or M.H. were abused in the manner described in the police reports. In addition, the severity of the alleged abuse as described by the prosecutor during the plea colloquy supports K.S.'s statement that "if I had been sexually abused in the manner described in the police reports alleged against my father, I would have a memory of this having occurred." Br. of Pet'r App. 9 at 2

C. Lack of Recantation by M.H.
¶25 The State contended that "the most telling factor" for denying Spencer's petition is the fact that M.H. did not recant his accusations. Br. of Resp't at 6. Spencer's activities with M.H. are included in six counts (X, XII, XIII, XIV, XV, and XVI). Two of these counts involve M.H. and M.S. (X & XIII), one involves M.H. and K.S. (XIV), and three involve only M.H. (XII, XV & XVI). Thus, the State adds that M.H.'s statements to investigators continue to provide adequate proof that Spencer abused not only M.H., but also K.S. and M.S.
*932 ¶26 Spencer argued that, regardless of M.H.'s unrecanted statements, the new evidence, when viewed in light of the entire record, changes the factual basis of his Alford plea to the numerous counts. See Dixon, 38 Wash.App. at 77, 683 P.2d 1144. He pointed out that M.S. was the oldest victim the best able to distinguish truth from fiction and the best able to accurately recall the eventsand that both K.S. and M.S. not only deny that their father abused M.H. but that they did not observe any abuse of M.H., even though "most of the incidents occurred with all three children being present." Br. of Resp't App. B at 23-24. The trial court's findings of fact include reference to M.H. and do not note any inconsistency between the testimony of M.S. and K.S. with their declarations' mention of M.H.
¶27 Here, we hold that the evidence proffered by Spencer (1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence,[11] (4) is material, and (5) is not merely cumulative or impeaching. Thus, he is entitled to the opportunity to withdraw his plea.

III. Numerous Irregularities Undermine Confidence That Justice Was Done
¶28 Spencer's argument that consideration of the entire recordincluding the new recantations, but not limited to themundercuts the factual basis of his Alford plea is strong and is supported by sworn testimony and lack of denial of the irregularities by the State. A sizable number of irregularities in the investigation and prosecution of Spencer's case exist. The State did not address, explain, or contradict any of these irregularities in its response to Spencer's PRP or in supplemental briefing and noted in oral argument only that "things were done differently then." The uncontested, identified irregularities include:
 The State's failure to disclose medical reports of K.S. and M.H., showing no physical injury or findings of abuse, before Spencer's Alford plea.[12]
 The State lacked corroborative evidence to support the charges, which were based only on the children's statements.[13]
 The fact K.S. provided contradictory statements at the time of the alleged abuse.
 A pre-plea evaluation of the case by Rebecca Roe, Senior Deputy Prosecuting Attorney for King County, concluded that the case was legally insufficient to proceed to prosecution.[14]
 Shirley Spencer, Spencer's wife at the time of the investigation and M.H.'s mother, had an affair with the sergeant in the Clark County Sheriff's Office who directly supervised Sharon Krause, the lead investigator on the case.
 M.S. denied the abuse for months before changing his story, which is consistent with his declaration that Krause pressured him into inculpating his father when he was eight years old.
 Despite the fact that the children alleged Spencer photographed them, the investigation never located any photographs.
 Krause used outdated and unreliable investigative techniques and she did not *933 take sworn or recorded statements from the children.
 Allegations by Spencer that he was suffering from "major depression" and was "receiving Xanex, Elavil and two days before had received an injection of sodium Amytal" that the federal district court characterized as "a very large dose." Br. of Pet'r at 9, App. 12 at 4.
¶29 Although the alleged irregularities may have been addressed and rejected piecemeal in previous state personal restraint and federal habeas corpus petitions,[15] the entirety of the record, when viewed in conjunction with the new recantations, supports Spencer's argument that the factual basis underlying his Alford plea has changed. See D.T.M., 78 Wash.App. at 220, 896 P.2d 108. Even without the trial court's overt determination of reliability of the recantations, the case has too many troubling irregularities to sustain an unexamined Alford plea that was based on what was known at the time and leaves the distinct conclusion that Spencer must be allowed to withdraw his plea to avoid a complete miscarriage of justice. See Cook, 114 Wash.2d at 813, 792 P.2d 506.
¶30 In particular, these irregularities include the following: (1) two of the three victims deny that they were abused and deny that M.H. was abused, when the record shows that a significant amount of the abuse, excluding counts XV and XVI, occurred in the presence of all three victims and four charges were based specifically on abuse of more than one victim at the same time; (2) previously undisclosed medical reports show no physical evidence of abuse of a recanting and a nonrecanting witness, despite allegations of abuse that included multiple acts of vaginal and anal penetration; and (3) multiple inconsistent victim statements, including repeated denials by M.S. that any abuse occurred, are explained by M.S. as a result of his having been pressured as a child to change his story during the course of the investigation.
¶31 Clearly, had all three victims recanted, these recantations and the irregularities regarding the investigation would have warranted remand to the trial court for further proceedings without a reference hearingit is an abuse of discretion if a new trial is denied where recanted evidence that is found reliable is the sole basis for conviction. See State v. Macon, 128 Wash.2d 784, 804, 911 P.2d 1004 (1996). Spencer did not meet this standard because M.H. did not recant.
¶32 But recantation by M.H. is not necessary to remand this case to the trial court for further proceedings on this record. Spencer's Alford plea is undermined also because M.H.'s allegations at the time are more questionable than K.S.'s or M.S.'s because his mother had an affair with Krause's supervisor during the investigation. Furthermore, M.S.'s and K.S.'s declarations deny that Spencer abused M.H. These declarations and the now-disclosed medical evidence significantly undermine M.H.'s allegations.
¶33 Because M.S. and K.S. were "essential witness[es]" formerly supporting the factual basis for the Alford plea and they "adhere[d] to the facts in [the] [sworn] recantation while under oath in open court [while] subject to cross examination" and because other significant irregularities occurred that deprived Spencer of factual information critical to his decision to enter an Alford plea, we grant Spencer's petition and remand to Clark County Superior Court to allow Spencer to withdraw his Alford plea. D.T.M., 78 Wash. App. at 220-21, 896 P.2d 108.
We concur: HOUGHTON and HUNT, JJ.
NOTES
[1] In an Alford plea, the defendant concedes that the state's evidence is strong and most likely would result in a conviction. North Carolina v. Alford, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); see also State v. Newton, 87 Wash.2d 363, 372, 552 P.2d 682 (1976).

Ordinarily, when a defendant pleads guilty, the factual basis for the offense is provided at least in part by the defendant's own admissions. With an Alford plea, however, the court must establish an entirely independent factual basis for the guilty plea, a basis which substitutes for an admission of guilt.
State v. D.T.M., 78 Wash.App. 216, 220, 896 P.2d 108 (1995) (citation omitted).
[2] RAP 16.4(b) defines "restraint" broadly, and includes when "the petitioner is under some other disability resulting from a judgment or sentence in a criminal case." The State does not dispute that Spencer is currently under restraint for the purpose of filing a PRP.
[3] Factual statements about what occurred before Spencer filed the present PRP are taken from appendices to the parties' briefs. Thus, they are not cited to as Report of Proceedings or Clerk's Papers. Neither party contests the accuracy of these appendices.
[4] Most of the alleged acts occurred during the summer of 1984, when K.S. and M.S. were visiting Spencer. Counts XV and XVI address post-August 1984 abuse allegations, after M.S. and K.S. returned to their mother's home in California.
[5] Because Spencer was a police officer, the Clark County Sheriff's Office submitted the case reports to Rebecca Roe, a supervisor of the Special Assault Unit of the King County Prosecutor's Office, for an independent review.
[6] Spencer did not present the recantation evidence in any previous state or federal petitions. Spencer raised the missing medical records issue in his previous state PRP but, at that time, the State neither confirmed nor denied the existence of the missing medical records. The State later denied that it had the records in its files. It appears that it was only during the federal habeas corpus proceedings that the State finally produced the medical reports relating to the physical examinations of K.S. and M.H.
[7] Spencer argues that RCW 10.73.090(1)'s one-year deadline for filing a collateral attack on the judgment does not apply. He contends that the exception for newly-discovered evidence, found in RCW 10.73.100(1), applies here. The State does not argue the petition is untimely or that Spencer did not exercise due diligence. See RCW 10.73.090(1), .100(1); In re Pers. Restraint of Bonds, 165 Wash.2d 135, 143, 196 P.3d 672 (2008).
[8] "[B]efore considering a defendant's motion for a new trial based on a recantation, the trial court must determine whether the recantation is reliable." State v. Ieng, 87 Wash.App. 873, 880, 942 P.2d 1091 (1997) (citing State v. Macon, 128 Wash.2d 784, 804, 911 P.2d 1004 (1996)).
[9] At the reference hearing, the State introduced a letter M.S. signed in 2003, requesting that Governor Locke not commute Spencer's sentence. Spencer includes in his supplemental brief a letter M.S. wrote to the Clemency and Pardons Board in 2006, supporting Spencer's pardon request.
[10] Following the reference hearing, the State now argues that K.S. is not a medical expert and she cannot prove that she would remember the abuse described in the police reports had it occurred.
[11] See note 7.
[12] The Ninth Circuit's opinion granted an evidentiary hearing on this issue and the State produced the reports after remand of the case to the federal district court.
[13] The sole piece of potential additional corroborating evidence identified by Spencer is that the State introduced Spencer's work schedule to show when he would have been home with the children. The State's brief does not address this issue. A review of the plea colloquy shows reference to Spencer's shifts as a Vancouver, Washington, police officer. Other potentially corroborating evidence includes: that M.H. developed an aversion to bubble baths (count XV speaks to molestation in a bathtub); M.H. described a motel room, in which the alleged activities in count XVI occurred (but neither party disputes that M.H.'s mother dropped M.H. off at the motel to visit Spencer); and Spencer allegedly possessed pornographic texts that the prosecutor did not intend to use in his case-in-chief. No physical evidence exists to corroborate the abuse allegations.
[14] Roe's evaluation is dated November 27, 1984. It stated, in part, that K.S.'s account "creates questions about fact vs. fantasy." Br. of Pet'r App. 3 at 2.
[15] The only prior opinion submitted by either party on appeal is the Ninth Circuit's opinion ordering an evidentiary hearing. But see also Spencer v. Klauser, 129 F.3d 127, 1997 WL 686029.