IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31678-5-III |
| Respondent, | ) | (consolidated with |
| | ) | No. 32259-9-III) |
| v. | ) | |
| | ) | |
| DANIEL L. SCHRECENGOST, | ) | |
| | ) | |
| Appellant. | ) | |
| ------------------------------------------------- | ) | |
| In re the Petition for Relief from Personal | ) | |
| Restraint of: | ) | |
| | ) | |
| DANIEL L. SCHRECENGOST, | ) | UNPUBLISHED OPINION |
| | ) | |
| Petitioner. | ) | |

SIDDOWAY, C.J. —After admitting to a year-long sexual relationship with a 12- and later 13-year-old girl, 38-year-old Daniel Schrecengost pleaded guilty to two counts of second degree child rape, reserving the right to request a Special Sexual Offender Sentencing Alternative (SSOSA) disposition. Mr. Schrecengost acknowledged his crimes, voluntarily sought therapy, and was otherwise eligible for the sentencing alternative. The sentencing court refused to impose a special disposition, however, explaining that it didn't

think a SSOSA was appropriate given a sexual relationship initiated by Mr. Schrecengost that it characterized as "way outside the bounds." Report of Proceedings (RP) at 95-96.

Mr. Schrecengost argues on appeal that the trial court abused its discretion by failing to take into account all the factors that weighed in favor of his eligibility for a SSOSA disposition. He also argues that a sentencing condition imposed by the court—prohibiting contact with minor females—failed to consider that Mr. Schrecengost has an adolescent daughter and violated his right to parent. In a timely personal restraint petition (PRP) consolidated with the appeal, Mr. Schrecengost seeks to withdraw his guilty plea based on an alleged misunderstanding of mandatory terms of community custody.

The trial court did not abuse its discretion by basing its refusal to impose a SSOSA on the extent and circumstances of Mr. Schrecengost's offense. As to the community custody condition, the record could support an exception in the case of the daughter, and because there was no express consideration of parent-child contact we remand for clarification of the condition.

For those reasons, because Mr. Schrecengost's statement of additional grounds presents no meritorious challenge, and because his PRP fails to demonstrate actual and substantial prejudice from any misunderstanding of community custody terms, we affirm the judgment and sentence, remand for the limited purpose of clarifying the community custody terms as they relate to Mr. Schrecengost's daughter, and dismiss his PRP.

2

FACTS AND PROCEDURAL BACKGROUND

Between August 2008 and July 2010, Mr. Schrecengost lived in a rental home with a woman and her two children: a son and a daughter, J.G. Mr. Schrecengost rented the upstairs of the home and the woman rented the downstairs, but J.G. slept upstairs on a couch in the living room.

About a year into the shared rental, Mr. Schrecengost woke J.G. up one night and performed digital and oral intercourse on her. J.G. was then 12 years old. Mr. Schrecengost continued to engage in this sexual activity with J.G. until October 2009, when he began engaging in penile/vaginal intercourse with her. He continued to engage in the several sorts of intercourse with J.G. at night and after school, until he moved out of the shared home in early July 2010. After moving out, he continued to call and visit J.G. and her family, and in late August 2010 came to the home when J.G. was alone and had penile/vaginal intercourse with her.

In September 2011, J.G. disclosed to her mother that Mr. Schrecengost had engaged in sexual intercourse with her during the time he lived in the home. J.G.'s mother filed a police report and broke off contact with Mr. Schrecengost. When he used a key that he had retained and attempted to enter the home in October 2011, J.G.'s mother barred the door, and thereafter filed a burglary report, changed the locks, and obtained an order of protection on behalf of J.G.

On the day the protective order was obtained, Mr. Schrecengost voluntarily went to the offices of the Spokane Police Department where he waived his *Miranda*[1] rights and participated in an interview, largely corroborating J.G.'s accusations. In a voicemail that Mr. Schrecengost left for J.G.'s mother thereafter, he stated that he fell in love with a "beautiful young girl" and that he believed she was his "soul mate" and that he should not go to prison for falling in love. Clerk's Papers (CP) at 1.

Mr. Schrecengost was charged with four counts of second degree rape of a child.[2] He agreed to plead guilty to two counts with the understanding that he was free to seek a SSOSA disposition.

The principal issue at the contested sentencing hearing was whether Mr. Schrecengost should be given a standard range sentence or the sentencing alternative he was requesting. Substantial evidence was presented by both sides. The court was presented with a presentence investigation report; letters from treatment providers to Mr. Schrecengost; a risk assessment by Dr. Paul Wert, to whom Mr. Schrecengost had been referred by his lawyer; a polygraph test result; and a packet of seven letters delivered in support of Mr. Schrecengost. The trial court also reviewed the probable cause affidavit.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] "A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076.

4

Four individuals appeared to make statements in opposition to granting the request for a SSOSA sentence: J.G., her mother, her brother, and J.G.'s boyfriend, who had encouraged her to report the rapes. Mr. Schrecengost's employer, his aunt, friends, a cousin, and his mother made statements on his behalf. Mr. Schrecengost also called Priscilla Hannon, a sex offender treatment provider, to testify to Mr. Schrecengost's exemplary record of attendance and participation in a treatment group that she facilitated.

The trial court denied Mr. Schrecengost's request for a SSOSA sentence, explaining that what it "came down to" for the court was "fairly long-term" contact "between someone who is 37 or 38 and someone who is 12 or 13"—something the court regarded as "way outside the bounds." RP at 95-96. It concluded, "[I]s it appropriate to sentence to a SSOSA in this type of a situation? My answer is, no." RP at 96.

The court imposed the required indeterminate sentence, with the minimum being 102 months, the low end of the standard range. Among the conditions imposed for the period of community custody was that Mr. Schrecengost "not have contact with female minors unless such contact is approved by the therapist and CCO [community custody officer] in writing." CP at 65. Mr. Schrecengost appeals.

## ANALYSIS

Mr. Schrecengost challenges the court's denial of a SSOSA sentence and the community custody term that could prevent him from having contact with his daughter, who was 11 years old at the time of sentencing.

*Denial of SSOSA*

The Sentencing Reform Act of 1981, chapter 9.94A RCW, generally provides a standard range of punishment for criminal offenses. The SSOSA, a special provision for certain qualifying sex offenders, provides an alternative sentence permitting community supervision and treatment in lieu of incarceration.

At the time of Mr. Schrecengost's offenses in 2009 and 2010, an offender was eligible for the special sex offender sentencing alternative if

- He or she was convicted of a sex offense that is not a serious violent offense or rape in the second degree, and

- He or she has no prior convictions for a felony sex offense in this or any other state; and no adult conviction for a violent offense in the five years prior to the date the current offense was committed; and

- The offense did not result in substantial bodily harm to the victim; and

- There was an established relationship/connection to the victim other than that resulting from the crime; and

- If the conviction results from a guilty plea, the offender must voluntarily and affirmatively admit to committing all of the elements of the crime; and

- The standard sentence range for the offense includes the possibility of confinement of less than 11 years.

Former RCW 9.94A.670(2) (2010).

If a court finds that an offender is eligible for the alternative, it may order an examination to determine whether the offender is amenable to treatment. RCW

6

9.94A.670(3). After receiving the reports, the court shall determine whether the

alternative sentence "is appropriate." RCW 9.94A.670(4). The court shall consider

> whether the offender and the community will benefit from use of this
> alternative, consider whether the alternative is too lenient in light of the
> extent and circumstances of the offense, consider whether the offender has
> victims in addition to the victim of the offense, consider whether the
> offender is amenable to treatment, consider the risk the offender would
> present to the community, to the victim, or to persons of similar age and
> circumstances as the victim, and consider the victim's opinion whether the
> offender should receive a treatment disposition under this section. The
> court shall give great weight to the victim's opinion whether the offender
> should receive a treatment disposition under this section.

Former RCW 9.94A.670(4). If the sentence is imposed over the victim's objection, the

court must enter written findings stating its reasons for imposing the treatment disposition.

The grant of a SSOSA is entirely at a trial court's discretion, so long as the court

does not abuse its discretion by denying a SSOSA on an impermissible basis, such as the

defendant's race, sex, or religion. *State v. Sims*, 171 Wn.2d 436, 445, 256 P.3d 285

(2011). A defendant may appeal if the trial court fails to comply with the procedural

requirements of the SRA, however, or if the sentence is alleged to be unconstitutional.

*State v. Osman*, 126 Wn. App. 575, 579, 108 P.3d 1287 (2005). In order for a "procedural

appeal to be allowed . . . it must be shown that the sentencing court had a duty to follow

some specific procedure required by the SRA, and that the court failed to do so." *Id.*

(citing *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993)).

7

Mr. Schrecengost argues that because the factors to be considered by the court in determining whether a SSOSA is appropriate are set out in the conjunctive in the statute, the sentencing court abused its discretion when it elevated the concern that a SSOSA is "too lenient in light of the extent and the circumstances of the offense" above the others. RCW 9.94A.670(4). He points out that he met "each and every one of the criteria" for a SSOSA, and that Dr. Wert found him amenable to treatment. Br. of Appellant at 5-6.

The legislature has *required* an offender to meet all of the criteria to qualify for a SSOSA, however, and the plain language of RCW 9.94A.670(4) permits a sentencing court to recognize a single factor as especially significant. Mr. Schrecengost does not demonstrate that the sentencing court failed to consider the other factors and the record reveals the opposite: it shows that the court reviewed the materials submitted, heard from supporters of Mr. Schrecengost and the victim, heard Ms. Hannon's testimony and the argument of counsel, and even commented that "[c]ertainly there is a possibility that Mr. Schrecengost would do well under a SSOSA . . . . Again, the issue comes back to what I think is the appropriate sentence in this case at this point in time given the statutory factors." RP at 95. Moreover, the exceptional impropriety of the relationship was reflected in the opposition of the victim and her family members to Mr. Schrecengost receiving a SSOSA, and the victim's opposition is entitled to great weight.

Mr. Schrecengost fails to demonstrate a procedural error or abuse of discretion by the sentencing court.

8

*Community custody condition*

Mr. Schrecengost's second assignment of error is that the condition prohibiting him from having contact with female minors violates his fundamental rights as a parent insofar as it prevents him from having contact with his daughter, A.S.

The SRA authorizes the trial court to impose "crime-related prohibitions" as a condition of a sentence. RCW 9.94A.505(8). A "crime-related prohibition" prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). We generally review the imposition of crime-related prohibitions for abuse of discretion, but we more carefully review conditions that interfere with fundamental constitutional rights, such as the right to the care, custody, and companionship of one's children. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). Where there is such interference, the conditions "must be 'sensitively imposed' so that they are 'reasonably necessary to accomplish the essential needs of the State and public order.'" *Id.* (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)).

In *State v. Berg*, in which Mr. Berg had been convicted of molesting his wife's 14-year-old daughter, the sentencing court imposed a no-contact order covering all minor females, thereby extending to Mr. Berg's 2-year-old biological daughter. *State v. Berg*, 147 Wn. App. 923, 941, 198 P.3d 529 (2008), *overruled on other grounds by State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011). The court upheld the no-contact order as a

reasonable crime-related prohibition, stating that the 14-year-old victim had lived in a home with Berg acting as her parent when the abuse occurred, and "the court reasonably feared that it would be putting A.B. in the same situation that A.A. was in when Berg sexually abused her. Thus, the trial court's order restricting contact was reasonably necessary to protect A.B." *Berg*, 147 Wn. App. at 942-43.

Other reported cases have found error when a sentencing court imposes a restriction on parental contact with a child. In *State v. Letourneau*, 100 Wn. App. 424, 427, 997 P.2d 436 (2000), for example, Ms. Letourneau was a teacher and the victim was a male student with whom she had sex; he was not a family member and did not live in her home. Ms. Letourneau's evaluators were unanimous that she was not a pedophile and nothing in the record suggested she posed a threat to her own children. *Id.* at 428-29.

In *State v. Ancira*, 107 Wn. App. 650, 654-55, 27 P.3d 1246 (2001), in which the defendant had been convicted of violating a domestic violence no-contact order obtained by his wife, a sentencing condition prohibiting him from all contact with his children was based solely on their having witnessed domestic violence between their father and mother. Observing that the parents were in the process of dissolving their marriage and an existing order prohibited the defendant from contact with his wife, the appellate court struck the condition prohibiting contact with the children as a matter better addressed by the family court in the dissolution proceeding.

In support of his argument that his daughter does not need protection from him, Mr. Schrecengost points to a pretrial order that had allowed him to have telephone contact with his daughter, A.S., and allowed for supervised visits with the consent of A.S.'s mother, thereby suggesting that "the State had little fear that Mr. Schrecengost's continued contact with his daughter would be detrimental to her." Br. of Appellant at 13. Since there was no specific discussion of A.S. at sentencing, he argues that at a minimum the sentence needs to be clarified.

The State denies the inference that it was previously unconcerned about Mr. Schrecengost's contact with A.S., pointing out that the earlier order was a *pretrial* release condition, at a time when Mr. Schrecengost enjoyed the presumption of innocence.

In this case, like *Letourneau*, the court was presented with no expert opinion that Mr. Schrecengost presents a risk to his daughter. Given the pretrial order, given the risk assessment, given the absence of any discussion whether A.S. should or should not be included in the prohibition on contact, and given the liberty interest at stake, we remand the sentence for the limited purpose of clarifying the intended scope of the prohibition of contact with female minors.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Schrecengost complains of ineffective assistance of counsel and bias on the part of the sentencing court.

11

*Ineffective assistance of counsel.* Mr. Schrecengost complains that his lawyer failed to object during sentencing to a "plethora of false matters," and that his lawyer failed to investigate or educate himself about Mr. Schrecengost's case. SAG at 6. To succeed on a claim of ineffective assistance, Mr. Schrecengost must show that counsel's performance was both deficient and that the deficient performance prejudiced him.

Mr. Schrecengost first points to several instances where his lawyer allegedly should have objected to statements being made by J.G. and her family members, or disputed points being made by the State during the sentencing hearing. *See* SAG at 6-8. The discrepancies he points out are sometimes inconsequential and sometimes matters that were more effectively addressed by the affirmative testimony of Ms. Hannon or by argument.[3] Given the purpose of a sentencing hearing—at which the defendant's guilt is a given—attempted cross-examination of victims, friends or family who come to court to express their feelings is a dubious strategy. This was illustrated when the State briefly tried it below, drawing the court's warning that a sentencing hearing is not a probation hearing and is not a trial. Mr. Schrecengost's lawyer was wise to forgo it. And Mr. Schrecengost's suggestion that his lawyer should have characterized J.G. as the aggressor in their relationship and pointed out the "hundreds" of love letters she sent him illustrates how important it was that Mr. Schrecengost's lawyer was making the strategic decisions.

---

[3] *E.g.*, by pointing out in argument that Mr. Schrecengost had a G.E.D. RP at 79.

To argue that 12-year-old J.G. had "enticed" Mr. Schrecengost at the same time he was requesting a treatment alternative would have been ill-considered, to say the least.

The record reveals an able handling of the sentencing hearing by a well-prepared lawyer. It is clear from the trial court's announcement of its sentence and its reasons that denial of the SSOSA would not have been affected by the details touched upon in the SAG. We find neither deficient representation nor prejudice.

Mr. Schrecengost also argues that his lawyer failed to interview witnesses and failed to adequately acquaint himself with the facts to be able to properly advocate. But the record reveals that Mr. Schrecengost's lawyer presented written evidence, called Ms. Hannon, lodged appropriate objections, and actively and zealously advocated for his client. Here, too, Mr. Schrecengost shows neither deficient representation nor prejudice.

*Judicial bias.* Mr. Schrecengost contends that the sentencing judge's statements revealing his personal attitude toward the underlying offense revealed bias.

In considering whether a SSOSA is appropriate, the trial court is required to consider whether the alternative is "too lenient in light of the extent and circumstances of the offense." RCW 9.94A.670(4). Mr. Schrecengost fails to explain how the sentencing court could have fulfilled its obligation without making a normative judgment about that factor. In any event, Mr. Schrecengost did not raise a claim of judicial bias or a violation of the appearance of fairness at the trial court. An appearance of fairness claim is not

13

constitutional in nature and may not be raised for the first time on appeal. RAP 2.5(a);

*State v. Morgensen*, 148 Wn. App. 81, 90-91, 197 P.3d 715 (2008).

## PERSONAL RESTRAINT PETITION

In a timely personal restraint petition Mr. Schrecengost argues that his plea

agreement was based upon misinformation, because nowhere in his plea statement was

there any disclosure that he would be subject to mandatory evaluation for treatment for

sexual deviancy, yet it was included as a condition of his community custody. He

contends that because of the misinformation, his guilty plea was involuntary and invalid;

that it thereby constitutes a manifest injustice; and that we are required to allow him to

withdraw his plea. His argument conflates standards and results that do not apply to a

collateral attack such as his PRP.

An involuntary plea constitutes a manifest injustice within the meaning of CrR

4.2(f). *State v. Walsh*, 143 Wn.2d 1, 6, 17 P.3d 591 (2001). Thus, if a motion to

withdraw the plea is made before judgment, a trial court must allow a defendant to

withdraw it under that criminal rule.

If a motion to withdraw a plea is made *after* judgment, it is governed by CrR

7.8(b), a potentially higher standard, in addition to CrR 4.2(f). *In re Pers. Restraint of*

*Stockwell*, 179 Wn.2d 588, 595, 602, 316 P.3d 1007 (2014). On direct appeal,

misinformation giving rise to an involuntary plea would be presumed prejudicial and,

unless waived, would support a motion to withdraw the plea. *Id.* at 596.

14

Challenges raised in a PRP are subject to an even more demanding standard. "A PRP . . . is not a substitute for an appeal." *Id.* "[C]ollateral review is distinct from a direct appeal because collateral relief 'undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders.'" *Id.* at 597 (quoting *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 824, 650 P.2d 1103 (1982)). In *Stockwell*, addressing a question of first impression, our Supreme Court clarified prior decisions, holding that a petitioner seeking to withdraw an allegedly involuntary plea based on misinformation (in *Stockwell*, a misstatement of the statutory maximum) "is required to satisfy the actual and substantial prejudice standard on collateral attack." *Id.* at 603.

A petitioner must support a PRP with facts or evidence upon which the claims of unlawful restraint are based; conclusory statements alone are insufficient. RAP 16.7(a)(2)(i); *In re Pers. Restraint of Williams*, 111 Wn.2d 353, 365, 759 P.2d 436 (1988). The evidence must consist of more than speculation, conjecture, or inadmissible hearsay. *In re Pers. Restraint of Spencer*, 152 Wn. App. 698, 707, 218 P.3d 924 (2009) (quoting *In re Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992)).

Mr. Schrecengost assumes that a guilty plea based on misinformation automatically entitles him to withdraw his guilty plea, quoting *In re Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983) as stating "[a]n invalid plea of guilty constitutes actual prejudice." Reply Br. at 6. He takes the statement out of context. In *Hews*, the court applied the requirement

15

that a petitioner must show actual prejudice. It identified a clear misunderstanding that was reflected in the record of the plea hearing and found that it amounted to a prima facie showing of prejudice, but not proof of prejudice. As the court explained, a petition that fails to make a threshold showing of actual prejudice should be dismissed; a petition that makes a convincing showing of actual prejudice should be granted; and a petition that falls in between—making a prima facie showing of prejudice but on an insufficient record and therefore not convincing—may be remanded for further hearing. The *Hews* court remanded Mr. Hews petition for a hearing but with the admonition, "This being a collateral review, petitioner has the burden of establishing that, more likely than not, he was actually prejudiced by the claimed error." *Id.* at 89.

Mr. Schrecengost has made no effort to identify facts or evidence showing that he was actually prejudiced by the error he alleges, evidently because he viewed relief as automatic. The declaration supporting his PRP offers only that "had I been duly informed that I would be subject to a mandatory evaluation for treatment for sexual deviancy as a result of my guilty plea, I would not have entered into such a plea in this matter." PRP at 28. But "a materiality inquiry, involving a hindsight review of defendant's motivations, is distinct from consideration of actual and substantial prejudice, which looks to the practical effects of a sentence." *Stockwell*, 179 Wn.2d at 602.

Mr. Schrecengost fails to meet his burden of demonstrating actual and substantial prejudice.

16

We affirm the judgment and sentence, remand to the trial court for the purpose of clarifying the community custody provision as it relates to contact with A.S., and dismiss the personal restraint petition.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.

_____
Fearing, J.