# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51173-8-II |
| Respondent, | |
| v. | |
| EDWARD MARK OLSEN, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON J. — Edward Mark Olsen appeals the superior court's order denying his CrR 7.8 motion for a new trial based on newly discovered evidence. He argues that pursuant to CrR 3.1(b)(2), he has a right to appointed counsel. He also argues that the rule provides him a right to be present at his reference hearing. Lastly, Olsen argues that the superior court abused its discretion by denying his motion for a new trial, by applying the wrong standard of review, and it violated the appearance of fairness doctrine and the code of judicial conduct. He requests that we remand for a new trial before a different judge. Olsen also filed a statement of additional grounds (SAG) asserting the same claims. We affirm.

No. 51173-8-II

FACTS

I. BACKGROUND

A. PROCEDURAL HISTORY, TRIAL, AND APPEAL[1]

This case arose out of a 2009 incident of domestic violence perpetrated by Olsen against the mother of his children, Bonnie Devenny, in the presence of their 12-year-old son, JEO.[2] Olsen broke into Devenny's house, poured gasoline on her while she was sleeping, and told her that she was going to die. Police later recovered a lighter near the bed.

The State charged Olsen with attempted first degree murder, attempted second degree murder, first degree burglary, felony harassment, and third degree malicious mischief related to the gasoline incident, and the felony counts included domestic violence aggravators because the crimes occurred in the presence of the victims, Devenny and JEO. At trial, Devenny testified consistent with the above facts. *See State v. Olsen*, 175 Wn. App. 269, 274-75, 309 P.3d 518 (2013). A jury convicted Olsen as charged on all counts except attempted first degree murder, and he received an exceptional sentence.

Olsen appealed and a panel of this court affirmed his convictions and sentence. *Olsen,* 175 Wn. App. at 291. Olsen petitioned for review of his exceptional sentence, and the Supreme Court affirmed.

---

[1] Unless otherwise indicated, the following facts are derived from *State v. Olsen*, 180 Wn.2d 468, 469-72, 325 P.3d 187 (2014).

[2] JEO was a minor in 2010; therefore, we use the minor's initials to maintain privacy. *See* RCW 7.69A.030(4).

2

B. MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE

On January 31, 2017, Olsen, through retained counsel, filed a CrR 7.8(b)(2) motion for a new trial based on newly discovered evidence and attached recantation affidavits of Devenny and JEO dated January 30, 2017. In their recantation affidavits, they both stated that many of the statements they made under oath at the trial in 2010 were not true.

More specifically, Devenny said that Olsen had not poured gasoline on her, did not have a lighter, and had not said anything threatening. JEO admitted that he had not seen Olsen pour anything on Devenny, never saw a lighter, and had not heard any threats. Devenny stated that at that time she was in a new relationship and did not want her ex-husband around to ruin things. She explained that she made up the stuff about Olsen pouring gas, threatening her, and standing over her with a lighter. JEO, who was 12 years old at the time of the incident, had believed Devenny's claims and embellished his story to support what she said had happened.

Olsen also filed two memorandums arguing that the newly discovered evidence warranted a new trial. The State filed a responsive memorandum arguing that the recantations were admissible, but were not credible and thus, the new evidence did not warrant a new trial as the new evidence would not change the outcome.

The parties argued over whether Olsen had the right to be present at the reference hearing and had the right to a court appointed lawyer. The superior court agreed to allow Olsen to be transported from prison to the jail to assist his counsel. The court explained that unless Olsen's counsel provided the court with authority supporting his argument, Olsen would not be allowed at be present at the reference hearing. The superior court requested briefing from Olsen's counsel on the issue of Olsen's right to be present at the reference hearing. At the next court date, the issue

was addressed again and counsel stated that he could not find authority that Olsen had the right to be present. The superior court then ruled that counsel's presence was sufficient to represent Olsen's interests at the hearing.

The reference hearing was held before the same judge who presided over the original trial. At the reference hearing both Devenny and JEO testified. Both were examined by counsel for the State, counsel for Olsen, and the judge. Olsen was represented by retained counsel at the reference hearing. The superior court requested supplemental briefing regarding the admissibility of Devenny's recantation testimony at a retrial and how that would affect the outcome. Both parties filed supplemental briefing.

On November 9, 2017, the superior court entered a written order denying the motion for a new trial. The superior court's order states in relevant part as follows:

> Here, both parties agree that [Devenny] and her son [JEO's] revised statements recanting their trial testimony (both the declarations signed in 2017 and their testimony provided at the hearing on June 27, 2017) meet the requirements of (2)[,] (3)[,] and (4) [In re the Pers. Restraint Petition of Faircloth, 177 Wn. App. 161, 165-66, 317 P. 3d 47 (2013)].

> The underlying facts of the case are well detailed in the State's Response to CrR 7.8 Motion to Vacate, pp 2-12 which are incorporated here by this reference. In essence, the "newly discovered evidence" comes from statements made by both [Devenny] and her son, which recant their trial testimony that Mr. Olsen was "pouring" gas on [Devenny] as she lay in bed, that he said "Die, Bitch" as he was doing so, and that he appeared to have a lighter in his hand. The new statements indicate that Olsen came into the bedroom after [Devenny] and son fell asleep and that his presence startled them awake. [Devenny] says she was trying to quickly get out of the bed, her legs got caught up in the covers and she believes she kicked the gas can that Mr. Olsen was holding. The son says he was startled awake, tackled the intruder and did not realize it was his father until the son heard Olsen's voice. [Devenny] testified at the hearing that she told her family that she had lied some time ago and that she decided to lie when the police contacted her because she wanted Olsen out of her life. Her son testified that he told the police what he heard his mother tell them because he was only twelve, and that between the event and

4

the trial he and his mother discussed the event so much that "it became like a real memory" to him.

When confronted with this type of testimony it is for the trial court to determine whether the original testimony of a recanting witness was perjured and, if so, whether the jury's verdict was likely influenced by it. *State v. Macon*, 128 Wn.2d 784, 801, 911 P.2d 1004 (1996).

It is notable that both [Devenny's] and her son's testimony was corroborated at trial by other witnesses who described her demeanor—that she was shaking and terrified. There were several witnesses who described the strong smell of gas in the bedroom, that the bed's comforter was wet, that both [Devenny] and her son were taken to the fire station first for decontamination from the gas; that [Devenny's] legs were red and irritated and that she also wore shorts that were wet and smelled of gas. Several people described her excited utterances naming her ex-husband as the perpetrator, that he was "pouring" gas on her, and that he said "die bitch, die." Also corroborating was the fact that Olsen broke into [Devenny's] home; and that there was a red gas can with a small amount of gas remaining in it near the foot of her bed nearest the door, and that the bathroom window screen was lying outside of the house—consistent with her crawling out that window screaming and in fear. [Devenny's] credibility was also attacked at trial by both her older son and by Mr. Olsen's mother.

Given the substantial corroboration at trial for the initial statements made by both [Devenny] and her son, later testified to at trial, this Court finds that it is unlikely that either's testimony at trial was perjured. Additionally, the newly discovered statements, if true, are not only not corroborated by the other evidence presented at the trial, they are not consistent with the behavior described, the observations from other objective witnesses, or [Devenny's] own statements about the event, and do not seem reasonable in light of all the other evidence.

The inconsistencies of the new statements, coupled with the Court's observations of both witnesses' trial testimony and their "recanting" testimony lead this Court to the conclusion that neither [Devenny's] nor her son's new statements are credible. This Court cannot therefore conclude that the outcome of the trial would probably be changed by the new statements.

Clerk's Papers (CP) at 384-85.

On December 8, the superior court entered findings of fact and conclusions of law which state in relevant part:

### FINDINGS OF FACT

#### I.

That on December 21, 2010, defendant Edward Mark Olsen was convicted of attempted second degree murder, first degree burglary, felony harassment, and third degree malicious mischief each conviction including a jury finding of domestic violence.

#### II.

That this court presided over Mr. Olsen's trial in 2010 and that in the present matter this court has been provided with transcripts of the testimony in that trial, including transcripts of the testimony of victims Bonnie [Devenny] and her son, [JEO], and that this court carefully reviewed the trial transcripts and considered the demeanor of both witnesses during both instances of testimony in this case.

#### III.

That on June 27, 2017, this court held an evidentiary hearing at which this court heard the testimony of [Devenny] and [JEO]. (Footnote omitted).

#### IV.

That [Devenny] and [JEO] had testified at trial that, *inter alia*, late one night Mr. Olsen had come into the bedroom where [Devenny] and [JEO] were sleeping (in the same bed), had poured gasoline on the bed and on them, and had stood over the bed with a lighter and said to [Devenny] words to the effect of "die bitch."

#### V.

That the trial testimony of the two victims was substantially corroborated by the circumstances, the testimony of investigating police, and the admissible excited utterances of the victims, including that [Devenny] was described at the time as shaking and terrified, that she and [JEO] had gasoline on their skin and clothing, that they and the bedroom smelled strongly of gasoline, that [Devenny] and [JEO] had been taken to a nearby fire station in order to shower the gasoline off of them, that [Devenny] identified Edward Olsen as the assailant and told other witnesses, while shaking and terrified, that Edward Olsen was "pouring" gasoline on her and saying "die, bitch, die," and that she had fled this attack by climbing out the bathroom window.

6

## VI.

That this court finds no indication that the trial testimony of [Devenny] and [JEO] were perjured.

## VII.

That the primary difference in the recantation testimony is that it was alleged that Edward Olsen was not pouring gasoline on them and the gasoline had gotten on them when [Devenny] was startled awake and kicked the gas can, that Edward Olsen did not say "die, bitch," and that Edward Olsen was not holding a lighter. [Devenny] alleged that she had lied at trial because she wanted Edward Olsen out of her life.

## VIII.

That this court and the parties agree that in deciding this matter, this court will apply the five factors used to consider newly discovered evidence, to wit, that the new evidence must (1) be such that it would probably change the result of the trial, (2) be discovered since trial, (3) not have been discoverable before trial through the exercise of due diligence, (4) be material and admissible, and (5) not be cumulative or impeaching. And that absence of any of the five factors is sufficient to deny a new trial. *In re Faircloth,* 177 Wn. App. 161, 165-66, 311 P.3d 47 (2013).

## IX.

That this court and the parties agree that items (2), (3), and (4) are established in that these recantations were discovered since trial, that the recantations did not exist at the time of trial and therefore could not have been discovered by the exercise of due diligence, and that the recantations address material matters and are admissible.

## X.

That the recantation testimony is not cumulative and although it may be used in an impeaching manner at retrial, the recantation testimony is not merely impeaching.

## XI.

That the newly discovered statements are not only not corroborated by the other evidence at trial, they are not consistent with the behavior described, the observations from other objective witnesses, or [Devenny's] own testimony about the event, and do not seem reasonable in light of all the other evidence.

No. 51173-8-II

**CONCLUSIONS OF LAW**

**I.**

That the above-entitled Court has jurisdiction over the parties and the subject matter of this action.

**II.**

That the recanting testimony of [Devenny] and [JEO] are not credible.

**III.**

That because the recanting statements are not credible, this court cannot conclude that those statements would probably change the result of the trial.

**IV.**

That therefore, as ordered in this court's Order of November 9, 2017, Edward Olsen's motion for new trial is denied.

CP at 389-92.

Olsen appeals.

ANALYSIS

I. LEGAL PRINCIPLES

CrR 7.8(b)(2) allows relief from a judgment for "[n]ewly discovered evidence which by due diligence could not have been discovered in time to move for new trial under [CrR] 7.5." CrR 7.8(c)(1) states that the motion must state the grounds upon which relief is sought "and supported by affidavits setting forth a concise statement of the facts or errors upon which the motion is based."

We review a superior court's ruling on a CrR 7.8(b) motion for an abuse of discretion. *State v. Robinson*, 193 Wn. App. 215, 217, 374 P.3d 175 (2016). The superior court abuses its discretion when its decision is "manifestly unreasonable or based on untenable grounds or reasons." *Robinson,* 193 Wn. App. at 217-18.

8

Our review of an order denying a CrR 7.8(b) motion is limited to the record and evidence presented at the CrR 7.8 hearing, and on appeal a defendant cannot raise issues regarding the validity of the underlying judgment and sentence. *State v. Schwab*, 141 Wn. App. 85, 96-97, 167 P.3d 1225 (2007). We review whether the superior court's denial of the motion for a new trial based on newly discovered evidence was proper. *State v. Gaut*, 111 Wn. App. 875, 881, 46 P.3d 832 (2002).

## II. RIGHT TO COUNSEL AND RIGHT TO BE PRESENT

Olsen argues that once the superior court determined that his CrR 7.8 motion for a new trial was not frivolous and that it would hold a hearing, he had the right to appointed counsel under CrR 3.1(b)(2) and *State v. Robinson*.[3] He also argues that the rule gave him the right to be present at the hearing. He further argues that his retained counsel's failure to cite to CrR 3.1(b)(2) or to *State v. Robinson* interfered with his right to counsel.

The State argues that Olsen never raised the issue of the right to counsel below and Olsen was represented by retained counsel who filed the motion for a new trial and also represented him at the hearing. The State also argues that Olsen does not have the right to be present under CrR 3.1(b)(2), and the superior court properly declined to allow him to be present but allowed him to be transported from prison to assist his counsel. We agree with the State.

CrR 3.1(b)(2) provides:

A lawyer shall be provided at every stage of the proceedings, including sentencing, appeal, and post-conviction review. A lawyer initially appointed shall continue to represent the defendant through all stages of the proceedings unless a new appointment is made by the court following withdrawal of the original lawyer

---

[3] 153 Wn.2d 689, 696, 107 P.3d 90 (2005).

pursuant to section (e) because geographical considerations or other factors make it necessary.

"Because the asserted error is a violation of a court rule (rather than a constitutional violation), it is governed by the harmless error test." *State v. Robinson*, 153 Wn.2d at 697. Reversal is appropriate under the harmless error test only if the error was prejudicial, in that, within reasonable probabilities, if the error had not occurred, the outcome of the motion for relief would have been materially affected. *Robinson,* 153 Wn.2d at 697.

Here, Olsen concedes that he has no right to appointed counsel at a post-conviction hearing under either the federal or state constitutions. He also concedes that a post-conviction proceeding is not a critical phase of the proceedings. Olsen argues he had a rule-based right to appointed counsel at the hearing; however, he was represented by retained counsel at the hearing. Thus, there is no violation of CrR 3.1(b)(2).

Olsen argues that CrR 3.1(b)(2) provides him a right to be present at the hearing; however, the rule does not provide him such a right. Further, he does not show prejudice by his failing to be present at the hearing.

Because Olsen had a retained lawyer at the reference hearing to assist him, and he fails to show a rule violation or prejudice, we hold that his claim of a CrR 3.1(b)(2) violation fails.

### III. APPLICABLE LEGAL STANDARD

Olsen argues that a new hearing is warranted because the superior court abused its discretion by applying the wrong legal standard when it concluded that the outcome of the trial

would probably not have been changed by the recantation testimony. We hold that the superior court applied the correct legal standard, and thus, Olsen's claim fails. [4]

We review a superior court's application of the law to the facts de novo. *State v. Corona*, 164 Wn. App. 76, 79, 261 P.3d 680 (2011). We review a superior court's ruling on a CrR 7.8(b) motion for an abuse of discretion. *Robinson*, 193 Wn. App. at 217. The superior court abuses its discretion when its decision is "manifestly unreasonable or based on untenable grounds or reasons." *Robinson,* 193 Wn. App. at 217-18.

*State v. Macon* is the seminal case in Washington on granting a new trial based on newly discovered evidence. 128 Wn.2d 784, 911 P.2d 1004 (1996). The *Macon* court stated,

> To obtain a new trial based upon newly discovered evidence, a defendant must prove that the evidence: (1) will probably change the result of the trial; (2) was discovered after the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching.

128 Wn.2d at 800. The "[a]bsence of any of the five factors is sufficient to deny a new trial." *In re Faircloth*, 177 Wn. App. at 166.

The superior court must make a threshold determination of the reliability of the recantation testimony. *Macon,* 128 Wn.2d at 804. In making that reliability determination, the court may consider the circumstances surrounding the case, including the recanting witness's age, possible reasons for recanting, relevant facts at the time of recantation, and the time between the testimony and the recantation. *Macon,* 128 Wn.2d at 802. The existence of independent corroborating evidence supporting the recanting witness's original testimony is not a controlling factor. *Macon,*

---

[4] Olsen also raises this same issue in his SAG. For the same reasons explained here, his SAG argument also fails.

128 Wn.2d at 804. The question is whether a reasonable juror would find the recantation reliable, given the circumstances under which it was made. *See Macon*, 128 Wn.2d at 800. "When determining whether the newly discovered evidence will probably change the result of trial, we do not consider what effect the newly discovered evidence may have on the defendant's case, but rather we weigh the newly discovered evidence against the strength of the State's evidence." *In re Faircloth*, 177 Wn. App. at 167-68 (citing *State v. Peele*, 67 Wn.2d 724, 732, 409 P.2d 663 (1966)).

The superior court, not the jury, determines the credibility of the recanting witness. *See State v. Ieng,* 87 Wn. App. 873, 880, 942 P.2d 1091 (1997) (superior court makes own credibility determination without regard to whether a jury might find the witness credible). If the testimony of the recanting witness is the "sole" evidence establishing guilt and the superior court finds the recantation credible, it is an abuse of discretion to deny the motion. *See In re Pers. Restraint of Clements*, 125 Wn. App. 634, 641-42, 106 P.3d 244 (2005).

However, if the superior court determines that the recantation is unreliable and denies the motion for new trial, there is no abuse of discretion. *State v. Gassman*, 160 Wn. App. 600, 609, 248 P.3d 155 (2011). Since "[r]ecantation testimony is inherently questionable" and "does not necessarily, or as a matter of law, entitle the defendant to a new trial," a determination of the issues lies within the sound discretion of the superior court. *Macon*, 128 Wn.2d at 801. Further, when reviewing the superior court's factual findings, we consider only whether substantial evidence supports them and, if so, whether they support the court's conclusions of law. *Macon,* 128 Wn.2d at 799. "Unchallenged findings of fact are verities on appeal." *State v. Rankin*, 151 Wn.2d 689, 709, 92 P.3d 202 (2004). As with all credibility determinations, if the superior court bases its

decision on a determination of credibility, we do not disturb that finding on appeal. *See Morse v. Antonellis,* 149 Wn.2d 572, 574-75, 70 P.3d 125 (2003) (credibility determinations are solely for the trier of fact).

Olsen argues that if the superior court had applied the correct legal standard, it would have found the recantation testimony to be credible and that the newly discovered evidence would "likely affect the verdict" because the only evidence supporting the attempted murder and felony harassment crimes was the "pouring gasoline on and threatening to kill Bonnie Devenny." Br. of App. at 42 (quoting *Olsen*, 175 Wn. App. at 173-74).

Olsen further argues[5] that the superior court applied the wrong legal standard by failing to consider the following relevant factors related to JEO's testimony: (1) JEO's youthfulness at the time as he was 12 at the time of the incident and 13 at trial; (2) JEO's "vulnerabilities of youth;" (3) the pressure from family members who did not believe the initial accusations; (4) JEO's trial testimony that his "instinct" was to protect his mother who he was living with at the time; and (5) JEO's trial testimony that it was very dark, and he "couldn't see much," but still maintained he could see the intruder pouring gas and the color of the gas can, and he was present when his mother talked to the policed officer before he was interviewed. Br. of Appellant at 35-36.

Olsen also argues that the superior court failed to consider the following factors related to Devenny's testimony: (1) she was not involved with Olsen and had not been for many years and was not under his influence at the time she recanted; (2) there was no evidence she had any motive or pressure to recant; (3) the recantations only addressed the second degree attempted murder

---

[5] Olsen assigned error to the superior court's finding of fact XI and conclusion of law II.

conviction, not Olsen's other convictions; and (4) there was no other evidence other than the recanted evidence to support the felony harassment conviction based on Olsen's "die, bitch," comment at the time, overheard by JEO, which she had to reasonably believe would be carried out by him at the time. Br. of Appellant at 39, 41.

But we do not review credibility determinations. *State v. Cross,* 156 Wn. App. 568, 581, 234 P.3d 288 (2010). We limit our review to whether the recantation findings support the superior court's conclusions, and as explained below, we hold that the findings support the court's conclusion, and the superior court did not err.

Regarding JEO's age at trial, Olsen cites *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) and *State v. Houston-Sconier*s, 188 Wn.2d 1, 391 P.3 409 (2017). However, he fails to explain how youthful factors considered at sentencing apply to a youth who recants his earlier trial testimony. Thus, the superior court did not err in this regard.

As to Devenny's recantation testimony, Olsen concedes that Devenny's excited utterances made on the day of the incident are admissible as substantive evidence of his guilt under ER 801(d)(1). The State summarized her statements as follows:

> These statements include that Olsen was in the house unannounced. Each statement includes that [Devenny and JEO] were awoken to this unannounced intruder pouring gasoline on the bed in which they had only moments before been sleeping. Each statement included threatening statements by the assailant. [Devenny] was reasonably certain that Olsen had a lighter when he was pouring and threatening. Police found the lighter next to the bed and [Devenny] testified that she had not put it there – she was "positive" that it was not there before Olsen came into the bedroom.
>
> There is no doubt in this record that [she] had a lot of gasoline on her. She can be heard on the 911 call saying, "I'm burning, I'm burning."

CP at 228.

14

In response to the motion for a new trial, the State argued:

> If [Devenny] testifies [at a retrial], she will be subject to cross examination concerning her original testimony. That original testimony is inconsistent [with her recanted testimony] and was given under oath in the prior trial. Thus, as not hearsay, her prior inconsistent statements are also admissible as substantive evidence of Olsen's guilt [under ER 801]. . . . [S]hould [she] be "unavailable" as defined by ER 804(a), the former testimony would be admissible under ER 804(b)(1).

CP at 311-12. We agree with the State that Devenny's prior, recanted testimony would be admissible upon retrial.

We determine that the findings support the superior court's conclusion of law "[t]hat because the recanting statements are not credible, this court cannot conclude that those statements would probably change the result of the trial." CP at 391-92. Because the recantation testimony was not credible and would not have probably changed the outcome of a retrial, the superior court's order denying the motion for a new trial was neither untenable nor unreasonable. Accordingly, we hold that the superior court did not abuse its discretion and we affirm the superior court's order.

IV. APPEARANCE OF FAIRNESS

Olsen argues that the superior judge violated the appearance of fairness and the relevant code of judicial conduct by the nature and tone of her questioning of Devenny and JEO at the hearing on his motion. We disagree and hold that the superior court did not violate the appearance of fairness. We decline to consider whether the superior court violated the code of judicial conduct because Olsen fails to adequately brief this claim.

15

Criminal defendants have a due process right to a fair trial by an impartial judge. WASH. CONST. art. I, § 22; U.S. CONST. amends. VI, XIV. Impartial means the absence of actual or apparent bias. *See State v. Moreno*, 147 Wn.2d 500, 507, 58 P.3d 265 (2002). "'The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial.'" *State v. Post*, 118 Wn.2d 596, 618, 826 P.2d 172, 837 P.2d 599 (1992) (quoting *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972)).

The test for determining "whether a judge should disqualify himself where his impartiality might reasonably be questioned is an objective one." *State v. Leon*, 133 Wn. App. 810, 812, 138 P.3d 159 (2006). A court must determine "whether a reasonably prudent and disinterested observer would conclude [the defendant] obtained a fair, impartial, and neutral trial." *State v. Dominguez*, 81 Wn. App. 325, 330, 914 P.2d 141 (1996). But "[w]ithout evidence of actual or potential bias, an appearance of fairness claim cannot succeed and is without merit." *Post*, 118 Wn.2d at 619. Further, a defendant who has reason to believe that a judge should be disqualified must act promptly to request recusal and "cannot wait until he has received an adverse ruling and then move for disqualification." *State v. Carlson*, 66 Wn. App. 909, 917, 833 P.2d 463 (1992).

ER 614(b) provides that

[t]he court may interrogate witnesses, whether called by itself or by a party; provided, however, that in trials before a jury, the court's questioning must be cautiously guarded so as not to constitute a comment on the evidence.

Olsen argues that the superior court's own questioning of Devenny and JEO was improper due to the manner and phrasing of questions, the similarity to cross examination, and tone attacking the witnesses' veracity. Olsen points to several examples during the hearing, and admits he did not object at the time. He cites to the judge's questions to Devenny, asking Devenny why a

stranger would be in her home with a gas can in hand. Olsen claims that the judge confronted Devenny by asking if she colluded with JEO, and the judge also questioned JEO's "reality" and ability to remember, asking, "Is that still your truth?" VRP (June 27, 2017) at 50-52. The judge further asked JEO if he had talked to his dad about the incident.

Olsen takes issue with the nature of the questions asked, the follow-up by the superior court, and the manner of her questions. Olsen ignores that ER 614(b) allows for interrogation by the court as long as the questioning does not constitute a comment on the evidence before the jury. Here there was no jury present. Thus, the superior court's examination of Devenny and JEO was authorized under the rules of evidence. Because Olsen fails to show how the superior court was biased and because the court's findings do not suggest a lack of impartiality, we hold that Olsen's claim that the appearance of fairness doctrine was violated fails.

Olsen also argues that the superior court violated the relevant code of judicial conduct. Olsen fails to adequately brief this issue. We do not consider inadequately briefed argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (argument unsupported by citation to the record or authority will not be considered). Because Hopwood inadequately briefed this issue, we decline to consider his claim.

CONCLUSION

We hold that the superior court did not abuse its discretion in denying Olsen's motion for a new trial and affirm the superior court's order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MELNICK, P.J.

GLASGOW, J.